Anthony Mark DANIEL

v.

**CITY OF TAMPA, FLORIDA, and Audley Evans, Executive Director, Tampa Housing Authority, in his official capacity.**

No. 92–838–Civ–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 17, 1993.

See also 818 F.Supp. 1491.

Matthew P. Farmer, Farmer & Fitzgerald, Tampa, FL, for plaintiff.

Richard C. McCrea, Jr., Zinober & McCrea, P.A., Kirby Collin Rainsberger, Peter Michael Walsh, City Attorney's Office, David Alan Dee, Stull & Barber, P.A., Martin Lee Garcia, Hill, Ward & Henderson, P.A., Ricardo L. Gilmore, Morrison, Gilmore & Clark, Tampa, FL, for defendants.

## MEMORANDUM

MORTON, Senior District Judge, Sitting by Assignment.

### I. Introduction

Anthony Mark Daniel filed this lawsuit alleging violations of his First Amendment right of freedom of expression and Fourteenth Amendment due process right of freedom from arrest and prosecution under an unconstitutionally vague enforcement scheme. His First Amendment claim brings up the issue of overbreadth.

### II. Facts

The Tampa Housing Authority owns property administered by a board of directors to provide low income housing. There are two such public housing complexes; College Hill and Ponce de Leon. Access to this property is restricted to lawful residents, invited guests, and those on official business. Any non-resident group or individual wishing to solicit, picket, demonstrate, or engage in any other concerted activity on Housing Authority property must first obtain permission from the board of directors.

Florida Statute 810.09 states, in pertinent part:

(1) Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in § 810.011, commits the offense of trespass on property other than a structure or conveyance.

This statute is enforced through the use of a list of individuals who have been issued a warning for trespassing on Housing Authority property. No one remains on this list more than twelve months after the last warning, but anyone on the list who trespasses again is subject to arrest.

The purpose of this enforcement scheme (as it applies to the Housing Authority) is to deter drug transactions. The Housing Authority properties have a history of drug problems. College Hill, for instance, accounts for a rate of narcotics arrests five times higher than the rest of the city. Of these, more than 79% are committed by non-residents. Of the rest, more than half are illegitimate residents who squat in vacant Housing Authority apartments, drug addicts who leave behind their used syringes and other filth. Overall, nearly 90% of those arrested on Housing Authority property are non-residents or squatters.

The Tampa Police Department has established the X–Ray Squad to provide safety in the public housing complexes and improve community relations between the police and Housing Authority residents. Officers on the X–Ray Squad are trained in the enforcement of the Florida trespass-after-warning statute. They know that they cannot warn or arrest individuals who are (1) invited guests of Housing Authority property, (2) authorized to be on Housing Authority prop-

erty, or (3) present on the city-owned streets, rights of way, sidewalks, or curbs which intersect or adjoin the public housing complexes.

Three times during the last two years, Daniel has been arrested for trespass after warning on Housing Authority property. At each arrest, Daniel had left the city-owned property and was standing either on the porch of an apartment complex or on the grounds next to an apartment complex. The first of these charges occurred on 25 January 1991. Daniel and some others were engaged in a Gulf War protest on city-owned property adjacent to one of the housing complexes. When a police officer saw Daniel enter Housing Authority property and tape a sign to one of the buildings, he prepared a criminal report affidavit without placing Daniel under arrest. Daniel was later convicted of this charge. The second charge followed Daniel's trespass onto the porch of one of the apartments but later was dismissed. The third arrest occurred on 29 November 1991, when Daniel entered Housing Authority property and began handing out leaflets. Although given the opportunity to leave, he refused and was placed under arrest. This charge also was dismissed.

During this two-year period, Daniel has picketed, leafleted, and demonstrated without incident on city-owned property, sometimes immediately adjoining the public housing complexes. There is no evidence that the Tampa Police Department has any policy or practice of making arrests based upon the content of anyone's speech. In fact, the TPD has an express policy requiring all police officers to be "diligent in protecting all citizens in the lawful exercise of their civil rights" and no one below the staff level has the authority to modify this policy.

## II. Conclusions of Law

■ The court is not entirely persuaded that the enforcement of the trespass statute constitutes a time, place, and manner restriction subject to forum analysis. After all, no one here has alleged that Daniel's physical presence upon the property (which is all the statute prevents) is in itself expressive conduct within any conception of the First Amendment. But to the extent that Daniel's claim might be so construed, the court holds that the Housing Authority property is neither a traditional public forum nor a designated public forum. "The Government's ownership of property does not automatically open that property to the public." *United States v. Kokinda*, 497 U.S. 720, 725, 110 S.Ct. 3115, 3119, 111 L.Ed.2d 571 (1990). Furthermore, the property does not become a public forum just because the public is allowed access. *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). The Housing Authority property is used for the private residence of low income individuals, not for the public exposition of ideas, so it is not a designated forum. And traditional public fora include only those places which "by long tradition or by government fiat have been devoted to assembly and debate," such as public streets and parks. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

■ The Housing Authority has never allowed non-residents to solicit, canvass, or distribute literature on its properties, and the lack of a formal policy forbidding this activity does not amount to the designation of the property as a public forum. *International Society for Krishna Consciousness v. Lee*, — U.S. —, —, 112 S.Ct. 2701, 2706, 120 L.Ed.2d 541 (1992) ("[T]he government does not create a public forum by inaction"). On the contrary, "[t]he decision to create a public forum must be made by intentionally opening a nontraditional forum for public discourse." *Id.* at —, 112 S.Ct. at 2706 (internal quotes omitted).

■ Because the Housing Authority property constitutes a non-public forum, the restrictions imposed upon speech on the property need only be reasonable as long as they are not an effort to suppress the speaker's activity based upon its viewpoint content. There was no evidence presented during the plaintiff's proof that the City enforced the trespass after warning statute for any reason other than to prevent unlawful trespass. Accordingly, the court analyzes the restriction, such as it is, only for reasonableness and

concludes that it easily meets that requirement.

Simply put, the public's compelling interest in keeping out dangerous drug dealers and addicts far outweighs Daniel's desire to post fliers or leaflets on Housing Authority property. Daniel is provided an alternative public forum only yards away, which he has used extensively and without incident in the past. To the extent that the enforcement of the trespass statute constitutes a time, place, or manner restriction, it is a slight one, and in any event amply justified.

 Daniel's overbreadth challenge is also weak. This case involves a statute directed at unprotected behavior which has terrible consequences for society in general and for the health and safety of the residents of the housing complexes in particular. The trespass statute is a useful and effective device in curtailing the drug trade in these areas. It is just the kind of statute addressed in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), when the Court admonished the lower courts to apply the overbreadth doctrine "sparingly" and as a last resort, particularly when the

> otherwise unprotected behavior that it forbids the state to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. *Id.* at 615, 93 S.Ct. at 2917.

To succumb to an overbreadth challenge, this kind of statute must be substantially overbroad; it must reach a substantial amount of constitutionally protected conduct. When "judged in relation to [its] plainly legitimate sweep," *id.,* this statute quite clearly does very little to impinge upon First Amendment rights.

The void-for-vagueness challenge is misdirected at the enforcement scheme. This court understands *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), and the rest of void-for-vagueness doctrine as requiring the statute itself to be unconstitutionally vague before it can fall.

The enforcement scheme is to some extent subject to prosecutorial discretion, so common sense dictates that only the statute itself need convey to the public a sufficiently definite warning as to the proscribed conduct. Florida's trespass after warning statute easily meets these requirements. It is not void for vagueness because, when measured by common understanding and practice of the English language, the statute quite clearly forbids one to trespass upon the subject property.

### III. Conclusion

Daniel's claims against the City of Tampa must fail. Since no reasonable jury could have found in his favor, the court granted the defendants judgment as a matter of law at the end of the plaintiff's proof.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, this case is dismissed.