**In the Matter of the WELFARE OF B.A.H., Child.**

**No. A12–1347.**

Supreme Court of Minnesota.

April 9, 2014.

Lori Swanson, Minnesota Attorney General, Saint Paul, MN; and Janet Reiter, Chisago County Attorney, Beth A. Beaman, Anne M. Zimmerman, Assistant County Attorneys, Center City, MN, for appellant State of Minnesota.

Cathryn Middlebrook, Chief Appellate Public Defender, Danail M. Mizinov, Special Assistant State Public Defender, Saint Paul, MN, for respondent B.A.H.

Caroline S. Palmer, Saint Paul, MN, for amicus curiae Minnesota Coalition Against Sexual Assault.

## OPINION

ANDERSON, Justice.

After a bench trial on stipulated evidence, the district court found respondent

B.A.H. guilty of first-degree criminal sexual conduct and adjudicated him delinquent. B.A.H. appealed, arguing that the statute under which he was adjudicated delinquent, Minn.Stat. § 609.342, subd. 1(g) (2012), is unconstitutional as applied to him. The court of appeals agreed and held that subdivision 1(g) violated B.A.H.'s rights to due process and equal protection. *In re Welfare of B.A.H.,* 829 N.W.2d 431, 438 (Minn.App.2013). We granted the State's petition for review. Because we conclude that application of subdivision 1(g) does not violate B.A.H.'s constitutional rights to due process or equal protection, we reverse.

## I.

In September 2011, X.X., then 13 years of age, stayed overnight at the home of his first cousin B.A.H., then age 14. B.A.H. was X.X.'s "best friend" and "pretty much [his] favorite cousin." B.A.H. and X.X. spent the night in B.A.H.'s room and "stayed up till later." B.A.H. drank two beers and some liquor he had taken from his parents' liquor cabinet. At B.A.H.'s urging, X.X. also drank "a little[,] like a shot of the liquor." He told B.A.H. he did not want any more. X.X. did not feel drunk, but B.A.H. "was acting weird" and "said he couldn't walk in a straight line." At some point in the night, B.A.H. told X.X. "it's normal . . . to be "curious" about sexuality.

B.A.H. then asked X.X. "to do stuff." X.X. did not want to, but complied "because [B.A.H.] [was] [X.X.'s] favorite cousin" and X.X. "didn't want to feel like . . . being mean." It is undisputed that the sexual encounter that followed was initiated by B.A.H. B.A.H. performed fellatio on X.X. and then arranged, facilitated, and directed an act of anal intercourse by X.X. with B.A.H. X.X. refused B.A.H.'s further request to touch him, and told B.A.H. to stop the sexual encounter. B.A.H. eventually stopped. B.A.H. told X.X. that he would kill X.X. if X.X. told anyone what had happened. X.X. characterized the threat as "more like an exaggeration" because B.A.H. "said he was . . . bi" and "just didn't want [X.X.] to tell anybody."

Several months later, X.X. told his mother that B.A.H. had performed oral sex on him. His mother suggested that he talk to his counselor about what had happened. X.X. then gave his counselor a more detailed and complete account of the incident, including the anal intercourse. The counselor shared the information with X.X.'s mother and, as a mandated reporter, disclosed X.X.'s allegations to the police. The State conducted an investigation and charged B.A.H. by petition with one count of first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(g).[1]

B.A.H. moved to dismiss the charge. He argued that subdivision 1(g), as applied to him, was unconstitutionally vague, pro-

---

1. Subdivision 1(g) provides that
 [a] person who engages in sexual penetration with another person . . . is guilty of criminal sexual conduct in the first degree if . . . the actor has a significant relationship to the complainant and the complainant was under 16 years of age at the time of the sexual penetration. . . . [C]onsent to the act by the complainant is [not] a defense.
 Minn.Stat. § 609.342, subd. 1(g). Minnesota Statutes § 609.341 (2012) defines several of

the relevant terms in subdivision 1(g). "Sexual penetration" includes "fellatio . . . [and] anal intercourse." Minn.Stat. § 609.341, subd. 12(1). An "actor" is "a person accused of criminal sexual conduct." *Id.,* subd. 2. A "complainant" is "a person alleged to have been subjected to criminal sexual conduct." *Id.,* subd. 13. And an actor has a "significant relationship" to a complainant if the actor is related to the complainant as, among other things, a "first cousin." *Id.,* subd. 15(2).

duced an absurd result, and violated his constitutional rights to equal protection; that the definition of a "significant relationship," as applied to him, was unconstitutional; that the statutory exclusion of consent as a defense, as applied to his case, was unconstitutional; and that dismissing the charge was in the interest of justice. The district court denied B.A.H.'s motion.

To avoid a trial but preserve the issue for appeal, B.A.H. maintained his not-guilty plea, waived his trial rights, and stipulated to the State's evidence.[2] He agreed that his appeal, if any, would be limited to the pretrial ruling on his motion to dismiss. The district court found B.A.H. guilty; adjudicated him delinquent; imposed indefinite probation; and ordered him to complete a residential treatment program and register as a sex offender. B.A.H. appealed. He argued that subdivision 1(g), as applied to him, produced an absurd result, violated his constitutional rights to due process by encouraging arbitrary and discriminatory enforcement, and violated his constitutional rights to equal protection. The court of appeals refused to consider the absurd-result claim because B.A.H. raised a different argument on appeal than he had in the district court,

held that subdivision 1(g) violated B.A.H.'s constitutional rights to due process and equal protection, and reversed. *B.A.H.*, 829 N.W.2d at 437–38. This appeal followed.

## II.

We review the court of appeals' determinations on issues of law, including the interpretation and constitutionality of statutes, de novo. *See, e.g., Larson v. State*, 790 N.W.2d 700, 703 (Minn.2010); *State v. Bussmann*, 741 N.W.2d 79, 82 (Minn.2007). We presume statutes to be constitutional, Minn.Stat. § 645.17(3) (2012), and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989).

## A.

The first of B.A.H.'s two constitutional claims is that subdivision 1(g) "offers no guidance for distinguishing between actor and complainant" and thus violates his rights to due process by "courag[ing] arbitrary and discriminatory enforcement."[3] The United States Con-

---

2. B.A.H. followed the procedure we described in *State v. Lothenbach*, 296 N.W.2d 854, 858 (Minn.1980), and which we have since extended to juvenile-delinquency proceedings, *see, e.g., In re Welfare of R.J.E.*, 642 N.W.2d 708, 711 (Minn.2002). Although Minn. R.Crim. P. 26.01, subd. 4, superseded the *Lothenbach* procedure in the adult criminal context, *see State v. Diede*, 795 N.W.2d 836, 842 n. 2 (Minn.2011), the rule does not apply in juvenile cases.

3. The State disputes B.A.H.'s premise, arguing that "the common meaning of the word actor, namely the person who acts," implicates only B.A.H. While we agree, for reasons noted elsewhere in this opinion, that X.X. was a victim of the wrongful acts of B.A.H., the State's attempt to rely on statutory interpreta-

tion to bypass B.A.H.'s constitutional claims is not persuasive. The Legislature specifically defined "actor" in the context of criminal sexual conduct, Minn.Stat. § 609.341, subd. 2, and we are not convinced that the "common meaning" of the word is relevant here. The court of appeals concluded that, as a technical matter, "[u]nder the[ ] facts [of this case], both X.X. and [B.A.H.] clearly violated" subdivision 1(g). *B.A.H.*, 829 N.W.2d at 436. Each is a first cousin of the other and engaged in sexual penetration with the other, who was younger than 16 at the time. *See* Minn.Stat. § 609.342, subd. 1(g); *see also* Minn.Stat. § 609.341, subds. 12, 15(2). Of course, this case does not present an opportunity to consider any constitutional (or other) issues that might arise if the State were to charge X.X., or a similarly situated victim,

stitution and the Minnesota Constitution provide equivalent protection against the deprivation of liberty without due process of law. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988); *see also* U.S. Const. amend., XIV, § 1; Minn. Const. art. I, § 7. This protection extends to juvenile-delinquency proceedings, which " 'must measure up to the essentials of due process and fair treatment.' " *In re Gault,* 387 U.S. 1, 30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (quoting *Kent v. United States,* 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)).

 Vague laws can violate due process in at least two ways: they "trap the innocent by not providing adequate warning of unlawful conduct" and they "unleash the potential for unfair and uneven law enforcement by not establishing minimal guidelines." *State v. Becker,* 351 N.W.2d 923, 925 (Minn.1984). Accordingly, we require "that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *accord Bussmann,* 741 N.W.2d at 83. Although these two requirements of due process present "analytically distinct bases upon which one may challenge a statute on vagueness grounds," *State v. Ness,* 834 N.W.2d 177, 184 (Minn. 2013), the United States Supreme Court has called the second basis—demanding " 'minimal guidelines to govern law enforcement' "—the "more important aspect of the vagueness doctrine." *Kolender,* 461 U.S. at 358, 103 S.Ct. 1855 (quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)). The second basis

is the principal ground for B.A.H.'s challenge.

 Naturally, the essential question in a vagueness challenge is whether the statute is vague. Vagueness, in the context of a claim like B.A.H.'s, means that a statute " 'leaves [its enforcers] free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.' " *Bussmann,* 741 N.W.2d at 83 (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966)). Thus, an ordinance that targeted "loitering" in a public place with a known gang member was unconstitutionally vague because it "provide[d] absolute discretion to police officers *to decide what activities constitute[d] loitering.*" *City of Chicago v. Morales,* 527 U.S. 41, 61, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (emphasis added) (internal quotation marks omitted). Similarly, a statute that required people to provide " 'credible and reliable' identification" on request by a police officer and "contain[ed] no standard for determining what a suspect ha[d] to do in order to satisfy the requirement" was unconstitutionally vague because it "vest[ed] virtually complete discretion in the hands of the police *to determine whether the suspect ha[d] satisfied the statute.*" *Kolender,* 461 U.S. at 358, 103 S.Ct. 1855 (emphasis added); *see also Giaccio,* 382 U.S. at 403, 86 S.Ct. 518 (holding that a law that let a jury award costs against an acquitted defendant "without imposing a single condition, limitation, or contingency" on the jury was unconstitutionally vague). Because such vagueness lets enforcers "pursue their personal predilections" and define what is and is not legal, it reflects an impermissible "abdicat[ion]" of the legislature's "responsibili-

under subdivision 1(g), and we express no opinion on such issues. But given the plain meaning of the statutory language, the State's

distinction is unavailing and we must turn to B.A.H.'s constitutional claims.

ties for setting the standards of the criminal law." *Goguen*, 415 U.S. at 575, 94 S.Ct. 1242; *see also United States v. Williams*, 553 U.S. 285, 306, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (explaining that statutes are unconstitutionally vague when "criminal culpability" depends on "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings").

■■■■■ In other words, a statute is unconstitutionally vague if it "affords no guidance to enforcement officials limiting their discretion in determining whether certain conduct is allowed or prohibited." *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn.1985). We emphasize this point: The essential constitutional problem with such statutes is not that they fail to identify whom to prosecute or allow for enforcement against some violators and not others, but, rather, that their statutory vagueness lets enforcers define who is a violator in the first place.

■■■ B.A.H.'s vagueness challenge fails to establish this fundamental and neces-

sary element. B.A.H. argues that subdivision 1(g), when applied to the facts of his case, technically could label both B.A.H. and X.X. as both "actor[s]" and "complainant[s]." But even if this is so, that does not mean that the statute is unconstitutionally vague. We have explained that statutory language that "details the kind of sexual conduct made criminal and specifies the persons with whom such contact is prohibited" is not vague. *Becker*, 351 N.W.2d at 925. Under such language, because "the prohibited conduct is well-defined," "[l]aw enforcement is not left entirely to its own discretion in deciding who has committed the criminal conduct." *Id.* at 926; *see also Bussmann*, 741 N.W.2d at 84. Here, as applied to B.A.H., subdivision 1(g) clearly defines the conduct it prohibits: A person may not engage in fellatio or anal intercourse with a child who is younger than 16 years old and to whom the person is related as a first cousin. Minn.Stat. §§ 609.341, subds., 12(1), 13, 15(2), 609.342, subd. 1(g). The statute is not unconstitutionally vague.[4]

**4.** B.A.H. cites *In re D.B.*, 129 Ohio St.3d 104, 950 N.E.2d 528 (2011), which the court of appeals found "persuasive." *B.A.H.*, 829 N.W.2d at 436. In *D.B.*, the Supreme Court of Ohio held Ohio's statutory-rape law unconstitutionally vague as applied to a 12–year–old adjudicated delinquent for engaging in sexual conduct with an 11–year–old. 950 N.E.2d at 530, 533. The court concluded that "[the two participants] would both be in violation of [the statute]" and then pronounced that "[t]he prosecutor's choice to charge [one] but not [the other] is the very definition of discriminatory enforcement." *Id.* at 533. The court addressed neither why the charging decision was discriminatory nor, more fundamentally, how the statute was vague. Rather, the court apparently perceived discrimination and then inferred that the statute must have authorized or encouraged discriminatory enforcement and, therefore, was unconstitutionally vague. Having analyzed subdivision 1(g) and concluded that it is not vague as applied here, we decline to follow the Ohio court's reasoning.

That said, we are equally unpersuaded by the cases from other jurisdictions cited by the State. The vagueness issue in *In re John C.* was whether a statute targeting "any person who … does any act likely to impair the … morals of [a] child" clearly prohibited the juvenile perpetrator's conduct. [20 Conn. App. 694] 569 A.2d 1154, 1155 n. 1, 1156 (1990) (internal quotation marks omitted). The court did not address whether the statute could also apply to the victim, or any issues that would raise. *Id.* at 1156–57. *W.C.B. v. State* did address an issue resembling the one here—whether "[a] statute grant[ed] unfettered discretion to the prosecutor to decide, in a situation involving sexual contact between two minors …, which participant to charge"—but the decision turned on an idiosyncrasy of Indiana law. 855 N.E.2d 1057, 1061–62 (Ind.Ct.App.2006) (relying on case law establishing intent as an element of the crime). Neither case answered a question analogous to the one we confront here.

### B.

 B.A.H.'s second constitutional claim is that the State's enforcement of subdivision 1(g) against him violates his rights to equal protection of the law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 2; *see also Scott v. Minneapolis Police Relief Ass'n,* 615 N.W.2d 66, 74 (Minn. 2000) (explaining that Article, Section of the Minnesota Constitution, though phrased differently, has been "analyzed under the same principles" as the Fourteenth Amendment's Equal Protection Clause). Under both the United States Constitution and the Minnesota Constitution, "all similarly situated individuals shall be treated alike, but only 'invidious discrimination' is deemed constitutionally offensive." *Scott,* 615 N.W.2d at 74 (quoting *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn.1986)). In particular, as relevant here, "the equal protection clause of the Fourteenth Amendment forbids the discriminatory enforcement of nondiscriminatory laws." *City of Minneapolis v. Buschette,* 307 Minn. 60, 64, 240 N.W.2d 500, 502 (1976).

### 1.

 Because an equal-protection challenge is essentially a claim of impermissible discrimination, demonstrating that the complaining party is similarly situated to a differently treated individual is usually a "threshold matter" to establishing a violation. *See Schatz v. Interfaith Care Ctr.,* 811 N.W.2d 643, 656 (Minn.2012). *But cf., e.g., Oyler v. Boles,* 368 U.S. 448, 455–56, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (addressing equal-protection challenge without expressly considering similarity); *State v. Vadnais,* 295 Minn. 17, 20–21, 202 N.W.2d 657, 659–60 (1972) (same). In this case, we need not decide whether the juveniles are similarly situated, because the State conceded at oral argument that B.A.H. and X.X. are similarly situated for purposes of subdivision 1(g).

### 2.

 B.A.H. bears the burden of establishing, by a preponderance of the evidence, that the decision to charge him and not X.X. was invidious. *Buschette,* 307 Minn. at 66, 240 N.W.2d at 503. To violate equal protection, enforcement must be based on an "arbitrary classification." *Id.* at 68, 240 N.W.2d at 504. Thus, in the absence of an "unjustifiable standard" such as race, religion, national origin, or sex— which would demand heightened judicial scrutiny—"all that need be shown [to defeat an equal-protection challenge] is a rational basis for the selectivity." *Id.* at 68–69, 240 N.W.2d at 504–05; *see also Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (addressing a sex-based classification); *cf. Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (recognizing that the Equal Protection Clause is violated when a person is "intentionally treated differently from others similarly situated and ... there is no rational basis for the difference in treatment"). In the context of charging decisions, if the state acts on a rational basis, "the conscious exercise of some selectivity in enforcement is not in itself a federal [or state] constitutional violation." *Oyler,* 368 U.S. at 456, 82 S.Ct. 501; *State v. Andrews,* 282 Minn. 386, 392, 165 N.W.2d 528, 532 (1969).

 The State argues that its decision to charge B.A.H. and not X.X. was rational and gives several reasons for it. B.A.H. responds that "the statute makes no distinction between" the participants in the forbidden sexual conduct in this case, and therefore the State could not draw such a distinction. B.A.H. is correct about the statute's reach, but wrong that the State was required to either prosecute both par-

ticipants or prosecute neither. An enforcement decision based on extrastatutory considerations is not necessarily arbitrary or otherwise invidious. We long ago rejected that proposition, adopting the following reasoning:

"Myriad factors can enter into the prosecutor's decision. Two persons may have committed what is precisely the same legal offense but the prosecutor is not compelled by law, duty or tradition to treat them the same as to charges. On the contrary, he is expected to exercise discretion and common sense to the end that if, for example, one is a young first offender and the other older, with a criminal record, or one played a lesser and the other a dominant role, one the instigator and the other a follower, the prosecutor can and should take such factors into account...."

*State v. Anderson*, 280 Minn. 461, 464–65, 159 N.W.2d 892, 895 (1968) (quoting *Newman v. United States*, 382 F.2d 479, 481–82 (D.C.Cir.1967)); *see also State v. Foss*, 556 N.W.2d 540, 540 (Minn.1996) (order) ("Generally, a prosecutor has broad discretion in the exercise of the charging function and ordinarily, under the separation-of-powers doctrine, a court should not interfere with the prosecutor's exercise of that discretion."). Prosecutors routinely make such decisions when they offer less-culpable perpetrators reduced charges in return for cooperation. Indeed, even basic choices about allocating prosecutorial resources often mean that those who commit the same crime do not always face the same legal consequences. B.A.H. makes no attempt to reconcile the apparently absolute constitutional rule he advances with such well-established practices and exercises of prosecutorial discretion.

Instead, B.A.H. invokes our statement that "an intentional or deliberate decision

... not to enforce penal regulations against a class of violators expressly included within the terms of such penal regulation ... constitute[s] a denial of the constitutional guarantee of equal protection," *Vadnais*, 295 Minn. at 19, 202 N.W.2d at 659. *Vadnais* does not support B.A.H.'s position. In that case, we expressly based our decision on officials' "fail[ure] to rebut the proof" that "compel[led] a conclusion that [they] intentionally, deliberately, or systematically discriminated in the enforcement of [an] ordinance." *Id.* at 20–21, 202 N.W.2d at 660. The equal-protection violation was not the enforcement decision itself, but the decision combined with the absence of a rational explanation for it.

■■■■ Here, by contrast, the State offers many reasons for its decision to charge B.A.H. and not X.X.: B.A.H. supplied alcohol, initiated the sexual conduct, provided lubricant, had previously engaged in similar conduct with another younger cousin, and threatened to kill X.X. if he told anyone what had happened, whereas X.X. resisted B.A.H.'s suggestions, refused to do certain things, and told B.A.H. to stop. These features of the case reflect an almost archetypal perpetrator and victim of criminal sexual conduct. Prosecutorial discretion is not unbounded, infallible, or immune to appellate review. *See, e.g., Andrews*, 282 Minn. at 391, 165 N.W.2d at 532 ("We do not doubt that there may be situations not manifested in this record in which the prosecutorial actions of the state may be held to deny a criminal defendant's right to equal protection of the laws...."). Here, however, that discretion was not abused. Because the State's reasons were permissible and related to the enforcement of subdivision 1(g), its charging decision was rational and, therefore, constitutional.[5]

5. To supplement his equal-protection argu- ment, B.A.H. again cites *D.B.* The Ohio court

## III.

For the foregoing reasons, B.A.H.'s delinquency adjudication does not violate his constitutional rights to due process and equal protection.

Reversed.

PAGE, Justice (concurring).

I agree with the court's conclusion that the application of Minn.Stat. § 609.342, subd. 1(g) (2012), does not violate B.A.H.'s constitutional rights to due process or equal protection. I am troubled, however, by the court's silence in the face of B.A.H.'s contention that "both boys committed first-degree criminal sexual conduct." B.A.H. argues that X.X. was also guilty of first-degree criminal sexual conduct because X.X. is his first cousin, B.A.H. was under 16 years of age at the time of the offense, and X.X. sexually penetrated him. This argument cannot go unchallenged because it harkens back to a day when sexual assault victims were considered as culpable as the perpetrators of such assaults. *See generally* Vivian Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum. L.Rev. 1, 12–16 (1977). Moreover, B.A.H.'s argument reflects an incorrect understanding of Minnesota law.

Minnesota Statutes § 609.342, subd. 1 (2012), provides in part:

A person who engages in sexual penetration with another person ... is guilty of criminal sexual conduct in the first degree if. . . .

. . . .

(g) the actor has a significant relationship[1] to the complainant and the complainant was under 16 years of age at the time of the sexual penetration. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense[.]

Minnesota Statutes § 609.341, subd. 2 (2012), defines an "actor" as the "person accused of criminal sexual conduct." Minnesota Statutes § 609.341, subd. 13 (2012), defines a "complainant" as a "person alleged to have been subjected to criminal sexual conduct, but need not be the person who signs the complaint." X.X. has not been accused, as that term is used in section 609.341, subdivision 2, of criminal sexual conduct in this case. X.X., having been subjected to criminal sexual conduct, is, however, a complainant. B.A.H. is the only person accused of criminal sexual conduct. Thus, under section 609.342, subdivision 1(g), B.A.H. is the only "actor." I would further note that there is no evidence in this case, much less any allegation, that B.A.H. was subjected to criminal sexual conduct.

Because X.X. is the only person in this case "alleged to have been subjected to criminal sexual conduct," and B.A.H. is the only person "accused of criminal sexual conduct," B.A.H.'s contention that both he and X.X. clearly violated section 609.342, subdivision 1(g), is simply wrong.

---

declared that "[a]pplication of the statute ... to a single party violates the Equal Protection Clause's mandate" because "the statute must be enforced ... without regard to the particular circumstances of an individual's situation." *D.B.,* 950 N.E.2d at 534. This articulation seems to preclude the exercise of discretion in charging and other prosecutorial decisions. Because neither the United States Constitution nor the Minnesota Consti-

tution requires such a rule, we again decline to follow the Ohio court's reasoning.

1. It is undisputed that B.A.H. and X.X. are first cousins, and therefore have a "significant relationship." *See* Minn.Stat. § 609.341, subd. 15(2) (2012) (including first cousins within the definition of "significant relationship").