MCDONALD, Judge (dissenting).
The questions presented are whether proved the administrative hearing officer acted illegally in affirming the dangerous dog declaration and whether Helmers proved the city's dangerous dog ordinance is unconstitutionally vague. Finding no illegality or constitutional infirmity, I would affirm the judgment of the district court in all respects. I respectfully dissent.
I.
I first address the challenge to administrative hearing officer's final determination order affirming the city's dangerous dog declaration. The standard of review controls the outcome of the challenge. The limited question presented is whether the administrative hearing officer acted illegally in affirming the city's dangerous dog declaration. See Iowa R. Civ. P. 1.1401 ; Meyer v. Jones , 696 N.W.2d 611, 613-14 (Iowa 2005). "Illegality exists within the meaning of the rule when the findings upon which the hearing officer based her conclusions of law do not have evidentiary support or when the court has incorrectly applied the proper rule of law. We presume the hearing officer properly performed her duty under the law, unless clear evidence to the contrary appears. The burden of showing illegality rests upon the asserting party." City of Des Moines v. Webster , 861 N.W.2d 878, 882 (Iowa Ct. App. 2014).
The Des Moines Municipal Code prohibits the keeping of "dangerous animals" within the city. See Des Moines, Iowa, Code § 18-200 (2016). The municipal code also vests enforcement authority with the chief humane officer of the city. The municipal code provides if "the chief humane officer determines that a dangerous animal is being kept, sheltered or harbored in the city by any person, the chief humane officer shall declare such animal to be a dangerous animal and shall order the person owning, sheltering, harboring or keeping the animal to cause it to be destroyed in a humane manner within three days of service of the notice of the order." Id. § 18-202.
The municipal code provides a "dangerous animal" is:
any animal, including a dog, except for an illegal animal per se, as listed in the definition of illegal animal, that has bitten or clawed a person while running at large and the attack was unprovoked, or any animal that has exhibited vicious propensities in present or past conduct, including such that the animal:
(1) Has bitten or clawed a person on two separate occasions within a 12-month period;
(2) Did bite or claw once causing injuries above the shoulders of a person;
(3) Could not be controlled or restrained by the owner at the time of the attack to prevent the occurrence; or
(4) Has attacked any domestic animal or fowl on three or more separate occasions within the lifetime of the attacking animal.
(5) Has killed any domestic animal while off of the property where the attacking animal is kept by its owner.
(6) Has bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery; or
(7) Any animal that was required to be removed from another city or county because of behavior that would also meet the definition of "dangerous animal" as set out in this section.
Id. § 18-196.
In this case, the hearing officer affirmed the chief humane officer's determination that Helmers' dog was a dangerous dog as set forth in paragraphs (3) and (6) above. To determine whether the hearing officer's conduct was illegal, we must first know the rules governing the administrative hearing. The city's municipal code provides that "formal and technical rules of evidence shall not apply in the conduct of the hearing." Des Moines, Iowa, Code § 3-21(g). Hearsay may be admitted if "of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." Id. The municipal code places the burden of proof on Helmers. "An appealable decision which has been memorialized in writing and signed by a city officer shall be prima facie evidence of the correctness of the facts specified therein." Id. § 3-22. In the administrative hearing, it was Helmers' burden to establish "by a preponderance of the evidence that [the dangerous dog declaration] [was] contrary to the law or this code [ ] or [was] unsupported by the facts." Id.
Given the foregoing, I cannot conclude the hearing officer acted illegally in concluding Helmers did not meet her burden in challenging the dangerous dog declaration pursuant to section 18-196(6). There was substantial evidence in the record establishing the cat suffered an "injury" within the meaning of section 18-196(6). The veterinary records show the cat suffered a "large laceration/wound on the right side of the dorsal pelvic area, approximately 6 cm in diameter." The cat also suffered "punctures on the right thorax, just caudal to the thoracic limb." The dog inflicted "crushing injury to tissues resulting in devitalization" and "severe deglovingwounds." A deglovingwound is one in which an extensive section of skin is completely torn off the underlying tissue, severing the blood supply.
There was substantial evidence in the record establishing the cat underwent corrective surgery to address the injuries sustained. Corrective is defined as "having the power or property of correcting, counteracting, or restoring to a normal condition." Corrective , Webster's Third New International Dictionary Unabridged (1993). It is also defined as "something that corrects." Id. Surgery is commonly defined as "[t]he branch of medicine that deals with the diagnosis and treatment of injury, deformity, and disease by the use of instruments" and more specifically "[t]reatment based on such medicine, typically involving the removal or replacement of diseased tissue by cutting." Surgery , American Heritage Medical Dictionary (2007), https://medical-dictionary.thefreedictionary.com/surgery. Another source defines surgery as the "branch of medicine dealing with manual and operative procedures for ... repair of injuries." Surgery , Taber's Cyclopedic Medical Dictionary (1997). The term corrective surgery thus means a manual or operative procedure to repair an injury and restore the injury to a normal condition. Here, the veterinarian cleaned and debrided the cat's wounds. Debridement is the "usually surgical removal of lacerated, devitalized, or contaminated tissue." Debridement, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/debridement (last visited Feb. 27, 2018). Another source defines debridement as the "removal of ... dead or damaged tissue, esp. in a wound." Debridement, Taber's Cyclopedic Medical Dictionary (1997). The veterinary records show the providers used a Jackson-Pratt drain during the course of treatment. A Jackson-Pratt drain is "a special tube that prevents body fluid from collecting near the site of ... surgery." National Institutes of Health, How to Care for the Jackson-Pratt Drain , 1,1 (2008), https://www.cc.nih.gov/ccc/patient_education/pepubs/jp.pdf. Images taken at the time of surgery show surgical staples that run the length of the animal's body. Finally, the veterinary records show billing for surgical services. On this record, Helmers did not establish the hearing officer acted illegally in concluding the cat underwent corrective surgery.
Helmers raises several spurious challenges to the hearing officer's decision. For example, Helmers contends there was insufficient evidence of causation. She contends "another animal certainly could have bitten" the cat. She also contends the cat "could have injured himself running up the tree." She concludes it is unknown what caused the cat's injuries. In making this argument, Helmers misapprehends her burden in this case. "Our charge is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence ... supports the findings actually made." Abbas v. Iowa Insurance Division , 893 N.W.2d 879, 891 (Iowa 2017). "Evidence is substantial when a reasonable mind would accept it as adequate to reach the findings, even though the evidence would support contrary inferences." City of Carroll v. Mun. Fire & Police Retirement Sys. of Iowa , 554 N.W.2d 286, 288 (Iowa Ct. App. 1996). Here, the cat's owner observed the dog violently shaking the cat, observed the cat run up a tree, and shortly thereafter observed the cat with significant injuries requiring corrective surgery. The most reasonable finding drawn from the facts is the dog caused the injury. One can safely conclude the hearing officer did not act illegally in inferring the dog caused the cat's injuries rather than some other possible cause.
Helmers urges the city was required to show the dog was unprovoked as a prerequisite to establishing the dog was dangerous within the meaning of the municipal code. The argument is not supported by the text of the ordinance. Section 18-196 provides a dangerous animal is "any animal, including a dog ... that has bitten or clawed a person while running at large and the attack was unprovoked, or any animal that has exhibited vicious propensities in present or past conduct." It is clear from the text of the ordinance the alternatives are in the disjunctive and provocation is material only to the first clause and not the second. This court has previously reached the same conclusion. See Hildreth v. City of Des Moines , No. 15-0961, 2016 WL 7403705, at *3 (Iowa Ct. App. Dec. 21, 2016) ("The term "unprovoked" appears in a different clause of the ordinance, which is separated from the applicable clause by the word "or." As such, we think there is a clear intent for it to apply to only the first scenario."). There is no reason to deviate from our prior panel opinion.
Helmers contends the city cannot legally establish her dog "exhibited vicious propensities" by evidence of only a single attack. Again, the text of the ordinance is to the contrary. Several provisions of the municipal code require the city to prove multiple incidents to establish an animal has vicious propensities. Section 18-196(1) provides an animal can be declared dangerous upon a showing the animal "[h]as bitten or clawed a person on two separate occasions within a 12-month period." Similarly, section 18-196(5) provides an animal can be declared dangerous upon a showing the animal "[h]as attacked any domestic animal or fowl on three or more separate occasions within the lifetime of the attacking animal." The provision at issue here does not have a requirement of multiple incidents as a prerequisite to establishing dangerousness. The inclusion of language in some provisions requiring multiple incidents to establish dangerousness supports the inference the city intentionally did not require multiple incidents to establish dangerousness under the provision at issue. See Oyens Feed & Supply, Inc. v. Primebank , 808 N.W.2d 186, 194 (Iowa 2011) ("Where the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.").
Finally, Helmers contends the city's seizure and impoundment of her dog was illegal. Specifically, she contends the city failed to follow its ordinances in seizing the animal. She also contends the seizure of the animal violated her constitutional rights to be free from unreasonable search and seizure as protected by the Fourth Amendment. The arguments are immaterial. It is questionable whether Helmers has standing to assert an illegal seizure claim. At the time of seizure, Bickel owned the dog; Helmers' claim of ownership arose only after the city had already seized the dog. See State v. Lowe , 812 N.W.2d 554, 569 (Iowa 2010) (noting a person ordinarily "cannot challenge the seizure of another"). Regardless, the city's authority to seize and impound the animal is wholly independent of its authority to declare the dog dangerous. The municipal code provides the chief humane officer can issue an order of destruction even when the city has not seized and taken possession of the animal at issue. See Des Moines, Iowa, Code § 18-202 (providing the chief humane officer "shall declare such animal to be a dangerous animal and shall order the person owning, sheltering, harboring or keeping the animal to cause it to be destroyed in a humane manner within three days of service of the notice of the order"). There is no suggestion in this case that the dangerous dog declaration was in any way derivative of the allegedly unlawful seizure. Thus, the remedy, if any, for any unlawful seizure would be wholly independent of the dangerous dog determination and not a ground for relief in this proceeding. See State v. King , 867 N.W.2d 106, 111 n.1 (Iowa 2015) ("The assertion of and claims regarding the [fourth amendment] right primarily arise in the criminal context due to the sole means of remedy: the suppression of evidence in a prosecution against an accused that was obtained in or because of an unconstitutional search or seizure of the accused, their home, or things."); State v. Cline , 617 N.W.2d 277, 291 (Iowa 2000) ("There is simply no meaningful remedy available to one who has suffered an illegal search other than prohibiting the State from benefiting from its constitutional violation.").
Helmers did not meet her burden of establishing the administrative hearing officer acted illegally in affirming the city's dangerous dog declaration. The hearing officer's findings are supported by substantial evidence. The hearing officer correctly determined and applied the law. The district court did not err in reaching the same conclusions.
II.
I next address the void-for-vagueness challenge to the city's animal ordinance. This court's review of a municipal ordinance is extremely deferential. "When an ordinance is challenged on constitutional grounds, a presumption of constitutionality exists that can only be overcome by negating every reasonable basis upon which the ordinance could otherwise be sustained." N & N Sanitation, Inc. v. City of Coralville , No. 01-1211, 2002 WL 31640695, at *6 (Iowa Ct. App. Nov. 25, 2002) (citing Ackman v. Bd. of Adjustment , 596 N.W.2d 96, 104-05 (Iowa 1999) ). This is a heavy burden. To meet this burden, the challenger must prove beyond a reasonable doubt the ordinance "clearly, palpably, and without a doubt, infringes the constitution." State v. White , 545 N.W.2d 552, 557 (Iowa 1996) ; Am. Dog Owners Ass'n, Inc. v. City of Des Moines , 469 N.W.2d 416, 418 (Iowa 1991).
The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution prohibit the deprivation of a constitutionally protected interest pursuant to vague laws. As relevant here, "[a] statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." State v. Showens , 845 N.W.2d 436, 441 (Iowa 2014).
A.
The majority first concludes the ordinance is unconstitutionally vague because the term "vicious propensities" is undefined and a reasonable person would not understand the scope of prohibited conduct. I disagree.
The term "vicious propensities" is not inherently ambiguous. "Condemned to the use of words, we can never expect mathematical certainty from our language." Grayned v. City of Rockford , 408 U.S. 104, 110 (1972). An ordinance is not unconstitutionally vague for lack of notice merely because a key word is undefined. See Lewis v. Jaeger , 818 N.W.2d 165, 183 (Iowa 2012). Due process is satisfied so long as the ordinance's "meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law or previous judicial constructions." Id. Here, the majority actually provides a workable definition of an animal exhibiting "vicious propensities" as one exhibiting aggressive tendencies. The majority's definition is based on the common understanding of the words "vicious" and "propensities" as set forth in dictionaries.
The majority's own definition of the term "vicious propensities" is sufficiently clear to provide a workable standard. Indeed, as defined by the majority, the term seems more clear and less vague than other language passing constitutional muster. See, e.g., Grayned , 408 U.S. at 108 (holding ordinance prohibiting "noise or diversion which disturbs or tends to disturb the peace or good order" to be constitutional); Showens , 845 N.W.2d at 449 (noting "reasonable person standards" in criminal law are not constitutionally infirm); Lewis , 818 N.W.2d at 184 ("In looking at the ordinance in question, there is good reason to use an elastic term such as 'emergency.' In order to protect public safety, the ordinance must necessarily use language that is sufficiently flexible to cover a wide variety of factual situations that may arise. We do not require a legislative body to define every term."); Devault v. City of Council Bluffs , 671 N.W.2d 448, 451 (Iowa 2003) (holding "nuisance" and "incomplete structure" were not unconstitutionally vague); State v. Watkins , 659 N.W.2d 526, 535 (Iowa 2003) (holding that child endangerment statute was not unconstitutional in criminalizing conduct that created "a substantial risk to a child or minor's physical, mental or emotional health or safety"); State v. Reed , 618 N.W.2d 327, 333-34 (Iowa 2000) (holding that term "continuing basis" relating to crime of ongoing criminal conduct was not vague); Wettach v. Iowa Bd. of Dental Exam'rs , 524 N.W.2d 168, 172 (Iowa 1994) (summarily rejecting challenge to disciplinary action for "dishonorable conduct"); In re J.S. , No. 16-0125, 2016 WL 1359122, at *6 (Iowa Ct. App. Apr. 6, 2016) (rejecting challenge to statute that allowed termination of parental rights where child suffered "mental injury" and stating a "certain amount of flexibility" was permissible).
To the extent the term "vicious propensities," standing alone, might be constitutionally ambiguous, the ordinance actually defines and limits the term. Section 18-196 provides a "dangerous animal" is "any animal that has exhibited vicious propensities in present or past conduct." The ordinance then identifies seven instances in which an animal can be found to have exhibited vicious propensities. For example, at issue in this case is subparagraph (6), which allows the city to declare an animal dangerous where the animal "[h]as bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." The ordinance's identification of these seven instances removes any constitutional ambiguity regarding the scope of prohibited conduct.
Even though the majority defines the term "vicious propensities" using common reference materials and even though the ordinance actually defines and limits the regulated conduct, the majority concludes the ordinance is nonetheless unconstitutionally vague because it is unclear whether the seven subparagraphs in section 18-196 are illustrative or exclusive. In reaching this conclusion, the majority misapplies the void-for-vagueness doctrine. Under the controlling doctrine, this court is required to affirmatively interpret and construe the ordinance "in a fashion to avoid a constitutional infirmity where possible." Showens , 845 N.W.2d at 441. For example, the majority could hold the seven subparagraphs under section 18-196 are the exclusive means by which the city could prove an animal had vicious propensities. This construction would bring clarity to the ordinance and be consistent with our case law, which requires a clarifying construction to preserve the constitutionality of an ordinance. See, e.g., State v. Coleman , --- N.W.2d ----, ----, 2018 WL 672132, at *14 (Iowa 2018) (stating ambiguous statute was not unconstitutional where the ambiguous provision was "understandable based on the greater context" of the remainder of the statute); Showens , 845 N.W.2d at 445 ("In sum, to meet the constitutional concerns discussed in Morales , we interpret the phrase 'to enable a sex offender to become familiar with a location where a potential victim may be found' as requiring a determination that familiarity was tied to the potential presence of victims."); Lewis , 818 N.W.2d at 185 (holding ordinance that vested discretion in city manager to determine when an "emergency" required remedial action was not vague when the court added an implied term of "objective reasonableness"); Formaro v. Polk Cty. , 773 N.W.2d 834, 840 (Iowa 2009) ("In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute any reasonable construction to uphold it."); State v. Nail , 743 N.W.2d 535, 542 (Iowa 2007) ("On the other hand, if we fail to adopt an in pari materia analysis to impose a ceiling on civil penalties under section 907.14(1), we violate the rule of statutory construction that a statute must be interpreted in a fashion that avoids unreasonable or absurd results inconsistent with legislative intent."); id. at 543 ("With this interpretation, we give the statute a reasonable, contextual interpretation that is workable, promotes symmetry, and which therefore best manifests legislative intent. Further, our approach gives life to the notion that a declaration of unconstitutionality should be avoided where possible through any reasonable statutory interpretation."); Wettach , 524 N.W.2d at 171 ("If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints on judicial legislation, the statute must be interpreted in that way."); State v. Bauer , 337 N.W.2d 209, 210 (Iowa 1983) ("The challenger carries a weighty burden and must overcome a vigorous presumption of constitutionality. If we can make a statute constitutional by a reasonable construction we do so."); In re Hochmuth , 251 N.W.2d 484, 488- 89 (Iowa 1977) ("[A] statute otherwise unconstitutional because of vagueness may be salvaged by a limiting interpretation which brings the application of the statute within constitutional bounds."). But the majority does the opposite. It applies the doctrine to create ambiguity instead of clarity and to find constitutional infirmity rather than preserve constitutional validity. This is error, and I dissent.
B.
The majority cites additional reasons for holding the statute unconstitutionally vague. A statute can be considered vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." Showens , 845 N.W.2d at 441-42. The majority concludes section 18-196(6) leaves too much discretion in the hands of city officials. Specifically, the ordinance does not exclude the possibility of enforcement against a person whose dog bites an "unlucky bird" with a broken wing or whose dog asserts a right to self-defense against an attack by an "aggressive opossum" lying in wait. The majority misapplies constitutional doctrine in reaching this conclusion.
Testing the sufficiency of an ordinance via the use of marginal hypotheticals is improper in void-for-vagueness-as-applied challenge. A statute or ordinance is not "vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." Johnson v. United States , 135 S.Ct. 2551, 2576 (2015). "It will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question." Grayned , 408 U.S. at 110 n.15. When addressing a vagueness-as-applied challenge, courts examine the facts of the case exclusively and not any hypothetical set of facts under which the statute might be unconstitutional. See United States v. Powell, 423 U.S. 87, 92 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."); Hegwood v. City of Eau Claire , 676 F.3d 600, 603 (7th Cir. 2012) ; State v. Dalton , 674 N.W.2d 111, 121 (Iowa 2004) (stating in a "void-for-vagueness-as-applied claim" "we consider whether the defendant's conduct clearly falls within the proscription of the statute under any construction" and the "fact the statute may be vague as applied to other factual scenarios is irrelevant to this analysis"); Devault , 671 N.W.2d at 451 ("Persons who engage in some conduct that is clearly prescribed by an ordinance as interpreted in a judicial proceeding cannot complain of vagueness as applied to other conduct."); Knepper v. Monticello State Bank , 450 N.W.2d 833, 839 (Iowa 1990) ("A person who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to hypothetical conduct."); Mallory v. State , 563 N.E.2d 640, 644 (Ind. Ct. App. 1990) (stating the challenger "is not at liberty to devise a hypothetical situation which might demonstrate vagueness" and a "statute is void for vagueness only if it is vague as applied to the precise circumstances of this case"). Thus, the relevant question is not whether the constitution prohibits the enforcement of the dangerous dog ordinance against an owner whose dog bites an "aggressive opossum." The relevant question is whether enforcement of the ordinance creates constitutional concern when the owner's dog violently bit and shook a cat, caused the cat lacerations, tore the skin from the flesh of the cat, and the cat had to undergo surgical procedures at a veterinary hospital. I conclude the enforcement action in this case is at the core of the statute and not void-for-vagueness as applied.
If the majority's use of hypotheticals was simply meant to illustrate the larger point that the city's chief humane officer has unbridled discretion in enforcing the ordinance, the majority's conclusion still misses the mark. The threshold inquiry in any void-for-vagueness challenge is whether the challenged ordinance is actually vague in the constitutional sense. See In re Welfare of B.A.H. , 845 N.W.2d 158, 163 (Minn. 2014) ("Naturally, the essential question in a vagueness challenge is whether the statute is vague. Vagueness, in the context of a claim like B.A.H.'s, means that a statute leaves its enforcers free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."). The vagueness doctrine does not prohibit the exercise of discretion-even unbridled discretion-in the enforcement of the law. Indeed, prosecutorial discretion is the rule and not the exception. See State v. Iowa Dist. Ct. for Johnson Cty. , 568 N.W.2d 505, 508 (Iowa 1997) ("In our criminal justice system, the decision whether to prosecute, and if so on what charges, is a matter ordinarily within the discretion of the duly elected prosecutor."). Instead, the vagueness doctrine prohibits the grant of discretion to law enforcement officials to enforce the laws where the grant of discretion is actually a delegation of policymaking authority due to an ambiguity in the language . See Kolender v. Lawson , 461 U.S. 352, 357-58 (1983) ("[W]e have recognized recently that the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine-the requirement that a legislature establish minimal guidelines to govern law enforcement. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep."); Grayned , 408 U.S. 108-09 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis."); Reed , 618 N.W.2d at 332 (providing the void-for-vagueness doctrine requires that a statute be defined "in a manner that does not encourage arbitrary and discriminatory enforcement"); see also Haggblom v. City of Dillingham , 191 P.3d 991, 997 (Alaska 2008) (stating an ordinance is unconstitutionally vague when "its language is so imprecise as to encourage arbitrary enforcement"); B.A.H. , 845 N.W.2d at 163 ; State v. Cowan , 2003-Ohio-3547, 2003 WL 21517981, at *2 (Ohio Ct. App. July 3, 2003) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.").
Consider the following example to hone the distinction. Chapter 321 of the Iowa Code sets forth numerous traffic and vehicle equipment offenses with great specificity. Our courts have recognized "nearly all vehicles, if followed for any substantial amount of time, commit minor traffic offenses" for which the driver could be cited or punished. See State v. Pals , 805 N.W.2d 767, 776 (Iowa 2011). The enforcement of the traffic laws, however, is left wholly in the discretion of law enforcement officials. See State v. Iowa Dist. Ct. for Johnson Cty. , 568 N.W.2d at 508. We would not conclude chapter 321, or any particular offense set forth therein, is unconstitutionally vague simply because law enforcement officials have complete discretion in enforcing the law.
The recent case of In re C.B. , No. 16-2117, 2018 WL 347539, at *1 (Iowa Ct. App. Jan. 10, 2018), is also illustrative. In that case, a child was adjudicated delinquent for committing sex acts against underage children. The child contended the law was vague as applied to him because he was also an underage child. He was thus a perpetrator and a victim, and the prosecutor had complete discretion to choose whom to prosecute, if anyone. This court rejected the constitutional challenge, concluding the "prohibited conduct is well defined" and the prosecutor's "exercise of discretion ... does not create a constitutional problem." Id. at *6.
These examples demonstrate there is a constitutional distinction between the case in which law enforcement officials have discretion in the enforcement of the law and the case in which law enforcement officials have discretion in both defining the law and enforcing the law. The former case does not present a vagueness concern while the latter case does. See Haggblom , 191 P.3d at 998 (stating a law is unconstitutionally vague when the language "is so imprecise that is confers upon law enforcement personnel undue discretion in determining what constitutes the crime"); B.A.H. , 845 N.W.2d at 164 ("The essential constitutional problem with such statutes is not that they fail to identify whom to prosecute or allow for enforcement against some violators and not others, but, rather, that their statutory vagueness lets enforcers define who is a violator in the first place.").
When understood in this light, the majority's conclusion the ordinance vests the chief humane officer with unlawful discretion fails. The challenged ordinance provides a dangerous animal is an animal that "[h]as bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." The operative terms-animal, human, fracture, muscle tear, disfiguring lacerations, injury, and corrective or cosmetic surgery-seem clear enough, readily capable of interpretation and construction, and sufficient to provide guidance in the enforcement of the law. The majority has thus not established, as a threshold matter, that the challenged language is vague within the meaning of doctrine. This is simply a case in which a law enforcement officer has discretion to enforce or not enforce a relatively clear law. This does not rise to the level of a constitutional violation. See, e.g., United States v. Foster , 754 F.3d 1186, 1193 (10th Cir. 2014) (rejecting argument that existence of discretion to charge multiple offenses for the same conduct rendered statute vague and stating "the standard is not whether the prosecutor has discretion but whether the law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis"); Daniel v. City of Tampa, Fla. , 843 F. Supp. 1445, 1448 (M.D. Fla. 1993) ("The void-for-vagueness challenge is misdirected at the enforcement scheme. This court understands Kolender v. Lawson , 461 U.S. 352 (1983), and the rest of void-for-vagueness doctrine as requiring the statute itself to be unconstitutionally vague before it can fall. The enforcement scheme is to some extent subject to prosecutorial discretion, so common sense dictates that only the statute itself need convey to the public a sufficiently definite warning as to the proscribed conduct."); State v. Altgilbers , 786 P.2d 680, 694 (N.M. Ct. App. 1990) ("In contrast, defendant has no claim that the CSP and CSC statutes are too vague to inform defendant or others what conduct is criminal. What is involved in the present case is not discretion to decide what acts are criminal but discretion to decide how to prosecute criminal acts. Such prosecutorial discretion is well-recognized in the law. Due process does not impose strict limits on that discretion. No void-for-vagueness problem is presented in this case.").
One final point. It is constitutionally immaterial the word "animal" includes birds, opossums, or any other animal. As noted above, the use of marginal hypotheticals is disallowed in as-applied challenges. Independently, the word "animal" is clear enough to provide constitutionally sufficient guidance to law enforcement officials. Whether the city would choose to enforce the ordinance following a dog bite of a bird or opossum is left to the discretion of city officials. "To avoid a rule from unduly restricting the regulation of certain matters, a certain degree of indefiniteness is necessary." Fisher v. Iowa Bd. of Optometry Exam'rs , 510 N.W.2d 873, 876 (Iowa 1994). It seems the majority's constitutional concern is simply a policy disagreement with the city's decision to permit enforcement where a dog bites an "animal" resulting in a specified injury where the word "animal" is not delimited to include only certain animals and exclude other animals. Mere policy disagreement with the City of Des Moines is not a constitutional concern. See, e.g., Haggblom , 191 P.3d at 998 (rejecting vagueness challenge, stating "[i]t is hardly surprising that a law enforcement officer uses his judgment in applying the law," and stating the use of "one's own judgment is hardly a concession of arbitrary action"); Zollar v. City of Chicago Dept. of Admin. Hearings , 44 N.E.3d 419, 422 (Ill. Ct. App. 2015) ("Zollar's real complaint is that the Chicago city council did not elect to include provocation by other animals within the definition of 'provocation' in the ordinance. But this does not make the ordinance vague as applied here. We will not second-guess the city council's decision."); Lucas Cty. Pit Crew v. Fulton Cty. Dog Warden , 79 N.E.3d 1244, 1247 (Ohio Ct. App. 2016) (rejecting vagueness challenge to dangerous dog ordinance); Cowan , 2003 WL 21517981, at *3 (rejecting vagueness challenge that definition of "vicious dog" was subjective); Garza v. State , No. 05-07-00176-CB, 2007 WL 3348419, at *3 (Tex. C.t App. Nov. 13, 2007) ("Although the animal control officer appeared to be confused about the common sense application of the term 'keep,' we cannot conclude the ordinance itself is so inherently confusing as to permit selective enforcement.").
III.
Helmers did not meet her burden of establishing the administrative hearing officer acted illegally. Nor did she meet her significant burden in establishing the city's ordinance is unconstitutionally vague. For these reasons, I respectfully dissent.