**IN THE COURT OF APPEALS OF IOWA**

No. 17-0794
Filed April 4, 2018

**DIANNA HELMERS,**
     Plaintiff-Appellant,

**vs.**

**CITY OF DES MOINES,**
     Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

A dog owner appeals the denial of her writ of certiorari.  **REVERSED AND REMANDED.**

Jamie L. Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

John O. Haraldson, Assistant City Attorney, for appellee.

Heard by Danilson, C.J., and Vaitheswaran, Doyle, Tabor, and McDonald, JJ.

**TABOR, Judge.**

This appeal involves the legality of a dangerous animal declaration issued by the City of Des Moines.  A dog, Pinky, bit a neighbor's cat, Rebel, when both animals were unlicensed and running at large in March 2016.  After impounding Pinky at the Animal Rescue League, the city's chief humane officer decided the dog exhibited "vicious propensities" under Des Moines Municipal Code section 18-196 (2016) and ordered her to be destroyed.  Because we find the dangerous-animal ordinance to be unconstitutionally vague as applied to Pinky, we reverse the city's declaration.

## I.      Facts and Prior Proceedings

In 2010, the city sent an animal control officer to the home of Charles Bickel based on a report his dog resembled a pit bull.  At that time, the city declared Bickel's pet, Pinky, to be a "vicious dog" based on her breed[1] and required Bickel to provide proof of a current license and $100,000 of liability insurance coverage.  Bickel initially complied but did not keep Pinky's license up to date.  According to Bickel, for the next six years Pinky lived in his home without incident, never biting a person or another animal.  Then, on March 27, 2016, a friend visiting Bickel's home accidently let Pinky out into the yard unsupervised while Bickel was taking

---

[1] The city has since revised this provision to replace the term "vicious" with "high risk" dog but still lists the following breeds: a Staffordshire Terrier, an American Pit Bull Terrier, an American Staffordshire Terrier, or any dog which has the appearance and characteristics of being predominately of the breeds of Staffordshire Terrier, American Pit Bull Terrier or an American Staffordshire Terrier.  *See* Des Moines, Iowa, Code § 18-41(6)–(9) (2016). Pinky's designation as a high-risk breed did not directly impact the city's later determination she was a "dangerous dog" under section 18-196.

a shower. When Bickel saw Pinky head back into the house he noticed a cut on her face and blood on her nose.

Meanwhile, Bickel's neighbor, Elizabeth, noticed her cat, Rebel, "had managed to sneak out of the door and was in her backyard." According to the animal incident report:

> Elizabeth looked out the back window to see the neighbor's white Pit Bull type dog named "Pinky" shaking Rebel in her mouth. Elizabeth ran outside and yelled. Pinky dropped Rebel and Rebel ran up a tree where she stayed for an hour. . . . When Rebel came down, Elizabeth found punctures on her chest and took her to Iowa Vet Specialties. . . . Elizabeth believes Rebel scratched Pinky up as well, but is unsure of bite wounds.

Elizabeth initially told Bickel's friend "it looks like Rebel got the better of Pinky." But according to the veterinary records, Rebel had a "large laceration/wound on the right side of the dorsal pelvic area, approximately 6 centimeters in diameter, with an additional wound" and "punctures on the right thorax, just caudal to the thoracic limb." The vet described Rebel's injuries as "crushing injury to tissues resulting in devitalization" and "severe degloving wounds." The cat required three dozen staples.

No witness saw which animal was the initial aggressor in the altercation.

The city impounded Pinky on March 29, 2016. The quarantine was set to last seven days, with Pinky's release slated for April 6. But on April 5, Chief Humane Officer James Butler declared Pinky to be a dangerous dog based on her conduct. *See* Des Moines, Iowa, Code § 18-196(3), (6). After a conversation with Sergeant Butler, Bickel signed a document labeled "surrender conditions," but the next day Bickel had a change of heart and filed an administrative appeal. After filing the appeal, Bickel sold his interest in Pinky to Dianna Helmers. The

administrative law judge (ALJ) did not believe either Bickel or Helmers had standing to pursue the appeal but nevertheless reached the merits of Helmers's arguments.[2]

The ALJ decided Pinky's seizure was procedurally proper and found substantial evidence supported the dangerous animal declaration.[3] The ALJ noted Helmers's claim that the ordinance was unconstitutionally vague:

> The Appellant argues in the alternative that the dangerous dog ordinance is unconstitutional for being vague and broad. The Appellant argues that under section 18-196, there is no element of provocation or a provision for self-defense. Therefore, a dog that was attacked by an at-large, vicious animal, or a dog protecting a human, could be considered a dangerous dog. The Appellant further argues that the terms "disfiguring laceration" and "corrective surgery" are ambiguous, as they are not defined by City ordinance.

As those constitutional claims were beyond the purview of the administrative proceedings, the ALJ preserved them for judicial review. *See McCracken v. Iowa Dep't. of Human Servs.*, 595 N.W.2d 779, 785 (Iowa 1999) (discussing necessity of raising constitutional claims during administrative process).

Helmers filed a petition for writ of certiorari to the district court, which affirmed the ALJ's finding of substantial evidence to support the dangerous dog declaration.[4] Helmers filed a motion to enlarge, pointing out the district court did not address her argument that the dangerous-dog ordinance was

---

[2] The city unsuccessfully contested Helmers's standing to pursue this matter in the district court. The city does not renew its standing challenge in this appeal.

[3] The ALJ determined the city's evidence satisfied subsection (6) of section 18-196. The ALJ did not rule on subsection (3).

[4] The district court found substantial evidence in the record to support subsection (3), though the ALJ did not rule on that ground.

unconstitutionally vague. In response, the district court upheld the constitutionality of the ordinance. Helmers now appeals the district court's rulings.

## II. Scope and Standards of Review

Our review of a district court certiorari ruling is generally for the correction of errors at law. Iowa R. Civ. P. 1.1412 (stating appeal from a district court's judgment in a certiorari proceeding is "governed by the rules of appellate procedure applicable to appeals in ordinary civil actions"); *see Dressler v. Iowa Dep't of Transp.*, 542 N.W.2d 563, 564–65 (Iowa 1996). "Because [Helmers] alleges a constitutional violation, our review is de novo." *See id.*

## III. Analysis

The keeping of "dangerous animals" is prohibited within the city of Des Moines. Des Moines, Iowa, Code § 18-200. The municipal code defines a "dangerous animal" as:

> any animal, including a dog, except for an illegal animal per se, as listed in the definition of illegal animal, that has bitten or clawed a person while running at large and the attack was unprovoked, or any animal that has exhibited vicious propensities in present or past conduct, including such that the animal:
>     (1) Has bitten or clawed a person on two separate occasions within a 12-month period;
>     (2) Did bite or claw once causing injuries above the shoulders of a person;
>     (3) Could not be controlled or restrained by the owner at the time of the attack to prevent the occurrence; or
>     (4) Has attacked any domestic animal or fowl on three or more separate occasions within the lifetime of the attacking animal.
>     (5) Has killed any domestic animal while off of the property where the attacking animal is kept by its owner.
>     (6) Has bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery; or
>     (7) Any animal that was required to be removed from another city or county because of behavior that would also meet the definition of "dangerous animal" as set out in this section.

Des Moines, Iowa, Code § 18-196.

In this case, the chief humane officer declared Pinky was a dangerous animal under paragraphs (3) and (6) of section 18-196. Because the ALJ upheld the declaration under paragraph (6) only, Helmers need not challenge the alternative ground as illegal in this certiorari appeal.

Helmers devotes the lion's share of her brief to arguing the city's dangerous dog declaration was not supported by substantial evidence. Evidence is substantial when reasonable minds could accept the quality and quantity of proof as adequate to reach the same findings as the hearing officer. *See City of Des Moines v. Webster*, 861 N.W.2d 878, 882 (Iowa Ct. App. 2014). If the reasonableness of the hearing officer's decision is open to a fair difference of opinion, courts may not substitute their own decisions on questions of substantial evidence. *Id.* But rather than retracing the district court's analysis of the substantial-evidence question, we find dispositive Helmers's claim that the city's dangerous-animal ordinance was unconstitutional as applied to Pinky. *See* U.S. Const. amend. XIV, Iowa Const. art. I, § 9.

Due process requires legislation imposing a sanction[5] to give a person of ordinary intelligence fair notice of what conduct is prohibited so he or she may act accordingly. *Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416,

---

[5] "[T]he void-for-vagueness doctrine applies to legislation establishing civil or criminal sanctions." *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007) (citing *State v. Powers*, 278 N.W.2d 26, 29 (Iowa 1979)). The city's dangerous-animal provisions impose criminal penalties: failure to comply with an order of the chief humane officer constitutes a misdemeanor offense. *See* Des Moines, Iowa, Code § 18-202(f).

417–18 (Iowa 1991). Due process also requires the enactment to provide explicit standards for those who enforce it and must not delegate basic policy matters to law enforcement or judicial officers. *Id.* at 418. In assessing whether the city's ordinance is void for vagueness, we presume constitutionality and give the provision any reasonable construction to uphold it. *See State v. Showens*, 845 N.W.2d 436, 441 (Iowa 2014). The practical effect of deciding an ordinance is unconstitutional "as applied" is "to prevent its future application in a similar context, but not to render it utterly inoperative." *See Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting from denial of certiorari).

After examining both of these requirements, we conclude the definition of a dangerous dog in section 18-196—particularly how the phrase "vicious propensities" is illustrated by paragraph (6)—violates the void-for-vagueness doctrine as applied to Pinky and her owner.

We start with the question of fair notice. Did the city's drafters enable a person of ordinary understanding to realize what the ordinance prohibits? *See Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979) ("Literal exactitude or precision is not necessary."). Helmers points out key terms are left undefined in the ordinance—specifically the phrase "vicious propensities" in the introductory paragraph and the terms "disfiguring laceration" and "corrective surgery" in paragraph (6). But code provisions may give fair notice if their meaning can be readily determined by relying on the generally accepted and common meaning of the words, or by referring to the dictionary or previous judicial constructions. *State v. Dalton*, 674 N.W.2d 111, 122 (Iowa 2004).

Taking a bird's-eye view of the dangerous-animal ordinance helps place the terminology in its larger context. "Dangerous animal" is defined in two ways: (1) "any animal, including a dog, . . . that has bitten or clawed[6] a person while running at large and the attack was unprovoked" or (2) "any animal that has exhibited vicious propensities in present or past conduct." Des Moines, Iowa, Code § 18-196. The second definition is illustrated by seven examples.[7] The first and second examples involve biting or clawing a person—either twice within twelve months or once causing injuries to the person's face or head. The third example describes an animal that could not be controlled or restrained by the owner at the time of an attack to prevent the occurrence. The fourth example of vicious propensities is three or more attacks on domestic animals or fowl within the lifetime of the attacking animal. The fifth example is killing a domestic animal while the attacking animal is off its owner's property. The sixth example, the one at issue here, is biting another animal or human that causes any of several non-trivial injuries, described as "a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." The seventh example refers to animals that have been removed from other jurisdictions for behavior that would meet the dangerous-animal descriptions in this section.

---

[6] Bitten or clawed means "breaking of skin." Des Moines, Iowa, Code § 18-196.

[7] The list is preceded by this language: "including such that the animal: . . ." The word "including" is "not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941); *see also State Pub. Def. v. Iowa Dist. Court for Black Hawk Cty.*, 633 N.W.2d 280, 283 (Iowa 2001) (explaining that word "including" usually is interpreted as a term of enlargement or illustration, but may also be interpreted as a term of limitation).

As an initial matter, it is unclear from the wording of the introductory paragraph's second definition of dangerous animal whether the exhibition of "vicious propensities" is satisfied by proof that an animal has engaged in any of the six listed examples of conduct or whether engaging in the listed conduct is suggestive, yet not determinative of "vicious propensities." It is also unclear whether the examples lead to an irrebuttable presumption of "vicious propensities" or if an owner may overcome the inference of viciousness by presenting evidence of the pet's prior gentle character or extenuating circumstances. These foundational ambiguities inhibit the ordinance from giving fair notice to pet owners as to what animal behavior will result in a declaration of dangerousness.

In the absence of a straightforward definition of "vicious propensities" in the ordinance, we may look to dictionaries or prior judicial renderings. At its core, the word "vicious" means "having the nature of vice." *Vicious*, The American Heritage College Dictionary (3d ed. 1997). "Vice" in turn may be defined as "an undesirable habit in a domestic animal." *Vice*, The American Heritage College Dictionary. As applied to animals, "vicious" means "marked by an aggressive disposition; savage." *Vicious*, The American Heritage College Dictionary. "Propensities" are defined as "innate inclinations or tendencies." *Propensities*, The American Heritage College Dictionary. Accordingly, a person checking a dictionary would likely view "vicious propensities" as an animal's undesirable, aggressive tendencies.

The phrase "vicious propensities" as applied to dogs also appears in Iowa tort cases. *See. e.g.*, *Fouts v. Mason*, 592 N.W.2d 33, 39–40 (Iowa 1999) (noting before premises liability may be imposed, a landowner must have knowledge of

dog's vicious propensities and the dog previously bit two children demonstrating vicious propensities); *Collins v. Kenealy*, 492 N.W.2d 679, 682 (Iowa 1992) (holding dog's owner liable for bite under Iowa Code section 351.21 regardless of knowledge of dog's vicious propensity); *Dougherty v. Reckler*, 184 N.W. 304, 305–306 (Iowa 1921) (noting defendant knew of a dog's vicious propensities because people told him the dog bit a child and their horses); *Alexander v. Crosby*, 119 N.W.717, 717 (Iowa 1909) (acknowledging civil liability for possessing a dog with vicious propensity); *Cameron v. Bryan*, 56 N.W. 434, 435 (Iowa 1893) (describing a dog known to chase people down a road as having vicious propensities); *Patterson v. Rank*, No. 10-0566, 2010 WL 5394623, at *1–3 (Iowa Ct. App. Dec. 22, 2010) (discussing when landlord is responsible for conduct of a tenant's dog with known vicious propensities). These cases do not offer a definitive definition of "vicious propensities." But they do support the notion that a dangerous dog's reputation is linked to its inclination to bite people or to worry domestic animals without provocation.

Helmers contends a lack of provocation should be a prerequisite to finding that a pet's conduct merits a dangerous-animal declaration. But the actual construction of the ordinance depicts a different intent on the part of the drafters. An animal running at large that bites or claws a person may be designated as dangerous only if the attack is unprovoked; whereas none of the six illustrations of "vicious propensities" carries a similar exemption for provoked conduct. *See generally Hildreth v. City of Des Moines*, No. 15-0961, 2016 WL 7403705, at *3 (Iowa Ct. App. Dec. 21, 2016) ("The term 'unprovoked' appears in a different clause of the ordinance, which is separated from the applicable clause by the word

'or.'"). We conclude this discrepancy adds to the uncertainty of what conduct is prohibited under the ordinance. Because section 18-196 does not provide a fixed and understandable meaning for the phrase "vicious propensities" and allows the city to make a dangerous-animal declaration even when a dog is provoked to bite by another animal, we find the ordinance failed to give Pinky's owner a reasonable opportunity to steer the animal clear of prohibited conduct.

On top of the uncertainty surrounding the phrase "vicious propensities," the language of paragraph six is not precise enough to enable pet owners to anticipate what conduct could lead to a dangerous-animal declaration. Unique among the six illustrations of "vicious propensities," paragraph six targets the biting of *any* other animal—whether domestic or wild.[8] It also does not matter under paragraph (6) whether the biting takes place in the pet's own backyard or whether the biting is provoked or unprovoked. If by some chance occurrence, as happened here, a dog leaves its owner's home and harms another animal—even if the other animal was also at large and was the first aggressor—the ordinance allows the single incident to precipitate a finding of "vicious propensities."

Further, the list of non-minor injuries in paragraph (6) appears tailored to human injuries and, therefore, does not provide clear guidance in situations like this one, where the dog bite resulted in injury to another animal. *See generally Pennsylvania v. Morgera*, 836 A.2d 1070, 1074 (Pa. Commw. Ct. 2003) (holding evidence did not support conclusion that injuries inflicted by dog on sheep

---

[8] Paragraph (6) also includes bites to humans resulting in non-minor injuries. Our as-applied vagueness analysis in this case does not address the situation where a dog bites a person.

constituted "disfiguring lacerations" or required "cosmetic surgery"). Here, the term "corrective surgery" is not readily defined in law or medicine, and it remains open for debate whether a veterinarian's use of multiple sutures on a cat's wounds may be classified as "corrective surgery."

We recognize where legislation can be made "constitutionally definite" by judicial construction, we are under an obligation to do so. *See Nail*, 743 N.W.2d at 539–40. But even our shiniest judicial gloss cannot provide adequate notice to dog owners regarding what conduct would show "vicious propensities" when a previously well-behaved dog faces off against a provocative animal running at large.[9] The definition of "vicious propensities" in section 18-196, and particularly paragraph (6), does not satisfy the minimal level of precision in drafting as applied to Pinky.

Even if Pinky's owner had fair warning of what conduct was prohibited, the next question is whether the dangerous-animal ordinance offered "minimal guidelines to govern law enforcement." *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (recognizing this requirement as the more important aspect of the vagueness analysis). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."

---

[9] Quoting an unnamed poet, our supreme court once said: "Let dogs delight to bark and bite, For God hath made them so." *Brown v. Moyer,* 171 N.W. 297, 299 (1919). In rejecting a common law negligence suit brought by the injured owner of a small dog that was chased by defendant's large dog, the court wrote: "[E]very owner of what is said to be 'man's best friend' should teach his dog to have a discriminating mind, when he undertakes to indulge in what is thought to be a natural propensity, if he would save his dog from an untimely grave." *Id.* Addressing dogs directly, the court continued: "Even the right of self-defense, claimed by your master as his inalienable right, is denied to you. Though bruised and beaten without cause, you cannot defend yourself without suffering the death penalty. Poor dog! Justice and mercy is not for you." *Id.*

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A vague law impermissibly delegates basic policy matters" to those entrusted with enforcing it, leading to "resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108–09.

We are persuaded by Helmer's argument that a dangerous-animal declaration based on injuries to another animal leaves too much discretion in the hands of city officials. "A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citing *Giaccio v. Pennsylvania*, 382 U.S. 382 U.S. 399, 402–403 (1966)). It is difficult to imagine how any Des Moines pet owner would know whether an altercation between their pet and another animal would spur the humane officer to declare their pet dangerous. As counsel for *Helmers* asserted at oral argument, an outdoor cat that snares an unlucky bird and breaks its wing could be declared a dangerous animal under section 18-196(6). But would the humane officer pursue such a case? If instead of Rebel, an aggressive opossum had been waiting for Pinky in the backyard and Pinky's defensive bite caused the wild animal a muscle tear, would the humane officer have decided Pinky exhibited "vicious propensities"? The ordinance does not delineate clear boundaries between what conduct by an animal is tolerated within the city limits of Des Moines and what marks an animal as having "vicious propensities." *See id.* at 64 (finding loitering ordinance failed to provide "sufficiently specific limits on the enforcement discretion of the police" to satisfy constitutional standards for definiteness and clarity). Accordingly, we

conclude that, as applied to Pinky, section 18-196(6) is void for vagueness.

**REVERSED AND REMANDED.**

Danilson, C.J. and Doyle, J., concur specially. Vaitheswaran and McDonald, JJ., dissent.

**DANILSON, Chief Judge** (concurring specially).

I concur in the majority opinion but write separately to elaborate on the vagueness issue and address the sufficiency of the evidence if the majority is in error in declaring Des Moines Code of Ordinances section 18-196(6) unconstitutionally vague.

Part and parcel to Helmers' argument that there is insufficient evidence to affirm the district court's ruling is Helmers' argument reciting "provocation is intrinsically an element of the definition of vicious propensities." Helmers further asserted:

> Because provocation is an element of vicious propensities, it would be redundant for the term to be added to the ordinance. To find otherwise could result in the destruction of a dog that was acting purely in self-defense, which would be an absurd and inhumane result. For these reasons, this court should find that the statute requires provocation. It is undisputed that the City has not shown by substantial evidence that Pinky was unprovoked.

There is no dispute the evidence fails to show if Pinky was provoked or unprovoked. However, neither the administrative law judge (ALJ) nor the district court interpreted section 18-196 to require lack of provocation.

As the majority observed, "where legislation can be made 'constitutionally definite' by judicial construction, we are under an obligation to do so." *See State v. Nail*, 743 N.W.2d 535, 540 (Iowa 2007). The well-settled principles of statutory construction were identified in *In re Estate of Gantner*, 893 N.W.2d 896, 902 (Iowa 2017), and need not be restated here. I would agree interpreting section 18-196 to require a lack of provocation could aid in interpreting the statute so it is not unconstitutionally vague, but we have previously concluded the ordinance provides various alternatives and not all of the alternatives require a lack of

provocation. *See Hildreth v. City of Des Moines*, No. 15-0961, 2016 WL 7403705, at *3 (Iowa Ct. App. Dec. 21, 2016). I find *Hildreth* persuasive and consistent with the plain reading of the ordinance.

Helmers' better argument is that the ordinance should be interpreted to require proof of vicious propensities even if the city has proven the elements of 18-196(3) or (6). Helmers argues, "Pinky must still have exhibited 'vicious propensities' in order to be declared dangerous." Again, this interpretation differs from the interpretation applied by the district court and the ALJ.

A review of the ordinance reflects two alternatives to meet the definition of a dangerous animal or dog. First, a dangerous dog is a dog that "has bitten or clawed a person while running at large and the attack was unprovoked." Des Moines, Iowa, Code § 18-196. The second alternative is any dog that "has exhibited vicious propensities in present or past conduct." *Id.* § 18-196.

I may be able to accept the conclusion Des Moines Ordinance 18-196(6) was not vague and interpret the ordinance to require a finding of vicious propensities in addition to one of the seven categories if this resolved the problem. But this does not end the efforts to unravel Des Moines Ordinance 18-196(6).

One of the oddities of the ordinance is observed by comparing category five with category six. Category five applies where a domestic animal is killed while the alleged dangerous animal is "off of the property where the attacking animal is kept by its owner." Des Moines, Iowa, Code § 18-196(5). Yet in category six, as applied to animals, there is no requirement of any specified location, death, attack, or that the animal was a domestic animal. *See id.* § 18-196(6). Category six only requires a fairly serious injury to another animal or person described as "a fracture,

muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." *Id.* § 18-196(6). However, the logic of the drafters of the ordinance is not consequential here. More importantly, as observed by the majority, "the term 'corrective surgery' [in category six] is not readily defined in law or medicine" and is a mystery term. There is no common meaning or definition of "corrective surgery." Although I would agree if the term is divided into two separate terms— "corrective" and "surgery"—there are common meanings that can be applied. Unfortunately, applying common definitions to a technical term may expand the definition intended by the drafters. The better approach is to defer to experts or specialized dictionaries for technical terms. *See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81 (2007). Perhaps expert testimony could have illuminated upon the issue of whether Rebel had undergone corrective surgery, but the city failed to present expert testimony from the treating veterinarian. Notwithstanding the presumption of constitutionality,[10] a reasonable person cannot determine what conduct is prohibited, and any effort to construe the ordinance to avoid its infirmity would be guesswork at best. In short, whether Rebel's sutures and other care constituted "corrective surgery" is unknown. [11]

In sum, I agree with majority's result that section 18-196(6) is unconstitutionally vague. Moreover, even if the vagueness could be overcome

---

[10] "In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute 'any reasonable' construction to uphold it." *Formaro v. Polk Cty.*, 773 N.W.2d 834, 840-41 (Iowa 2009) (citation omitted).

[11] At one time, Minnesota Statute section 347.50(3) defined a "potentially dangerous animal" as "[a]ny animal that, when unprovoked, bites a person on public or private property, causing a minor injury not resulting in muscle tears or disfiguring lacerations or requiring multiple sutures, or corrective or cosmetic surgery." As can be observed from the language of the statute, sutures were described as separate and distinct from corrective surgery.

through interpretation or construction of the ordinance, and thereby demystified, there is insufficient evidence to support the dangerous-dog declaration. No evidence was presented of any vicious propensities of Pinky other than her one act with Rebel, which I find wholly insufficient. Further, without expert testimony, there was negligible proof Rebel underwent any type of surgery or any "corrective surgery," whatever that latter term may entail.[12]

---

[12] There was also no evidence to support the declaration of dangerous dog under section 18-196(3) because, again, there was no evidence of vicious propensities, and alternative (3) requires the owner to be unsuccessful in efforts to restrain and control the dog, a fact lacking here.

**DOYLE, Judge** (concurring specially).

I concur with Judge Tabor's opinion. Although I have no dog in the fight, I feel compelled to ask: Why can't this dispute be settled?

At the time of the altercation between Pinky and Rebel, Rebel's owner did not want citations issued and hoped to work it out with Pinky's owner. Since then, Rebel made a full recovery and her veterinary bills were paid by Bickel's insurance carrier. Meanwhile, Pinky has been impounded for the last two years. Pinky's current owner, Dianna Helmers, and her previous owner, Charles Bickel, and his son, have been denied visitation with Pinky. Helmers offered to shelter Pinky at her rural Reinbeck licensed animal rescue shelter. But, after issuing a dangerous dog declaration on April 5, 2016, the City of Des Moines has been unwavering in its mission to kill Pinky. Two years of what must be costly litigation ensued.

The purpose of the city's dangerous dog ordinance is to protect those within the confines of the city from injury or harm by dangerous dogs. Helmers offered to remove Pinky from Des Moines and shelter her in Grundy County. Pinky's removal from Des Moines would eliminate the risk that Pinky might cause harm to someone in Des Moines. Sounds like a win/win solution—Pinky's life is spared and Des Moines is freed of what it perceives as a threat of harm to its citizens. Despite the offer from Helmers, no settlement was reached and the litigation continued—eventually ending up in this court. Asked at oral argument why the city had not accepted Helmer's offer, the city's counsel expressed "liability" concerns. I am confident the city's lawyers, or the city's insurance carrier's lawyers, are fully capable of drafting an ironclad release protecting the city from any potential liability in releasing Pinky to Helmers.

So, I ask again: Why can't this dispute be settled?

**VAITHESWARAN, Judge** (dissenting).

I respectfully dissent.

This is a case of one unlicensed domesticated animal (a dog) injuring another unlicensed domesticated animal (a cat). The City of Des Moines declared the dog a "dangerous animal." An administrative law judge affirmed the declaration after finding the cat's owner witnessed the cat in the dog's mouth and the cat sustained "deep lacerations that required approximately 36 staples to close." In my view, substantial evidence supports the administrative law judge's finding.

I turn to Helmer's void-for-vagueness challenge. Although the district court did not rule on this challenge in the original decision or in the ruling on Helmer's motion for enlargement, our precedent holds "a motion to enlarge findings preserves error on an issue not decided by the district court even if the district court does not address the issue following the motion." *Lewis v. Jaeger*, 818 N.W.2d 165, 175 n.4 (Iowa 2012). Based on this precedent, I would conclude error was preserved.

In her motion to enlarge, Helmers asserted section 18-196 is "unconstitutionally vague and overbroad, if there is no element of provocation." On appeal, she argues,

> [T]here is no provision for self-defense and the City argues that provocation is not required. As written, a dog who was attacked first by one or more at-large, vicious animals could be considered "dangerous," even though the dog was acting solely in self-defense.

In my view, allowing a defense that the attacking animal was provoked by the acts of another animal would lend greater uncertainty to the statute than the current language. If a larger animal chased the attacker would the chase serve as

sufficient provocation? If a smaller animal such as a cat strolled toward a larger animal such as a dog, would its mere proximity to the dog serve as sufficient provocation? A person reading an ordinance containing animal-to-animal provocation language would have difficulty understanding what the ordinance prohibits. *See id.* at 183 ("[A] statute cannot be so vague that a person of ordinary understanding would not know that their conduct is prohibited."). The fair-notice requirement would not be satisfied.

The inclusion of animal-to-animal provocation language would also lead to arbitrary enforcement. As it stands, section 18-196(6) requires a person to determine whether the animal has exhibited vicious propensities by biting another animal so as to cause "a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." If the enforcer of the ordinance also had to determine whether the other animal "provoked" the bite, whose word would the enforcer take? The "enforcer[] [would] define who is a violator in the first place." *See In re B.A.H.*, 845 N.W.2d 158, 164 (Minn. 2014)).

I would find the City's failure to include animal-to-animal provocation or self-defense language in section 18-196(6) does not render the ordinance void for vagueness. *See Zollar v. City of Chicago Dep't of Admin. Hearings*, 44 N.E.3d 419, 422 (Ill. App. Ct. 2015) (rejecting a void-for-vagueness challenge to a dangerous animal ordinance for failure to include provocation by other animals); *see also Van Bergen v. Eulberg*, 82 N.W. 483, 483 (Iowa 1900) ("A dog has no right to brood over its wrongs, and remember in malice."). I would also find the remaining terms of section 18-196(6) do not render the ordinance void for vagueness.

I would affirm the district court's affirmance of the administrative law judge's decision.

**MCDONALD, Judge** (dissenting).

The questions presented are whether proved the administrative hearing officer acted illegally in affirming the dangerous dog declaration and whether Helmers proved the city's dangerous dog ordinance is unconstitutionally vague. Finding no illegality or constitutional infirmity, I would affirm the judgment of the district court in all respects. I respectfully dissent.

I.

I first address the challenge to administrative hearing officer's final determination order affirming the city's dangerous dog declaration. The standard of review controls the outcome of the challenge. The limited question presented is whether the administrative hearing officer acted illegally in affirming the city's dangerous dog declaration. *See* Iowa R. Civ. P. 1.1401; *Meyer v. Jones*, 696 N.W.2d 611, 613–14 (Iowa 2005). "Illegality exists within the meaning of the rule when the findings upon which the hearing officer based her conclusions of law do not have evidentiary support or when the court has incorrectly applied the proper rule of law. We presume the hearing officer properly performed her duty under the law, unless clear evidence to the contrary appears. The burden of showing illegality rests upon the asserting party." *City of Des Moines v. Webster*, 861 N.W.2d 878, 882 (Iowa Ct. App. 2014).

The Des Moines Municipal Code prohibits the keeping of "dangerous animals" within the city. *See* Des Moines, Iowa, Code § 18-200 (2016). The municipal code also vests enforcement authority with the chief humane officer of the city. The municipal code provides if "the chief humane officer determines that a dangerous animal is being kept, sheltered or harbored in the city by any person,

the chief humane officer shall declare such animal to be a dangerous animal and shall order the person owning, sheltering, harboring or keeping the animal to cause it to be destroyed in a humane manner within three days of service of the notice of the order." *Id.* § 18-202.

The municipal code provides a "dangerous animal" is:

any animal, including a dog, except for an illegal animal per se, as listed in the definition of illegal animal, that has bitten or clawed a person while running at large and the attack was unprovoked, or any animal that has exhibited vicious propensities in present or past conduct, including such that the animal:
(1) Has bitten or clawed a person on two separate occasions within a 12-month period;
(2) Did bite or claw once causing injuries above the shoulders of a person;
(3) Could not be controlled or restrained by the owner at the time of the attack to prevent the occurrence; or
(4) Has attacked any domestic animal or fowl on three or more separate occasions within the lifetime of the attacking animal.
(5) Has killed any domestic animal while off of the property where the attacking animal is kept by its owner.
(6) Has bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery; or
(7) Any animal that was required to be removed from another city or county because of behavior that would also meet the definition of "dangerous animal" as set out in this section.

*Id.* § 18-196.

In this case, the hearing officer affirmed the chief humane officer's determination that Helmers' dog was a dangerous dog as set forth in paragraphs (3) and (6) above. To determine whether the hearing officer's conduct was illegal, we must first know the rules governing the administrative hearing. The city's municipal code provides that "formal and technical rules of evidence shall not apply in the conduct of the hearing." Des Moines, Iowa, Code § 3-21(g). Hearsay may be admitted if "of a type commonly relied upon by reasonably prudent persons in

the conduct of their affairs." *Id.* The municipal code places the burden of proof on Helmers. "An appealable decision which has been memorialized in writing and signed by a city officer shall be prima facie evidence of the correctness of the facts specified therein." *Id.* § 3-22. In the administrative hearing, it was Helmers' burden to establish "by a preponderance of the evidence that [the dangerous dog declaration] [was] contrary to the law or this code [] or [was] unsupported by the facts." *Id.*

Given the foregoing, I cannot conclude the hearing officer acted illegally in concluding Helmers did not meet her burden in challenging the dangerous dog declaration pursuant to section 18-196(6). There was substantial evidence in the record establishing the cat suffered an "injury" within the meaning of section 18-196(6). The veterinary records show the cat suffered a "large laceration/wound on the right side of the dorsal pelvic area, approximately 6 cm in diameter." The cat also suffered "punctures on the right thorax, just caudal to the thoracic limb." The dog inflicted "crushing injury to tissues resulting in devitalization" and "severe degloving wounds." A degloving wound is one in which an extensive section of skin is completely torn off the underlying tissue, severing the blood supply.

There was substantial evidence in the record establishing the cat underwent corrective surgery to address the injuries sustained. Corrective is defined as "having the power or property of correcting, counteracting, or restoring to a normal condition." *Corrective*, Webster's Third New International Dictionary Unabridged (1993). It is also defined as "something that corrects." *Id.* Surgery is commonly defined as "[t]he branch of medicine that deals with the diagnosis and treatment of injury, deformity, and disease by the use of instruments" and more specifically

"[t]reatment based on such medicine, typically involving the removal or replacement of diseased tissue by cutting." *Surgery*, American Heritage Medical Dictionary (2007), https://medical-dictionary.thefreedictionary.com/surgery. Another source defines surgery as the "branch of medicine dealing with manual and operative procedures for . . . repair of injuries." *Surgery*, Taber's Cyclopedic Medical Dictionary (1997). The term corrective surgery thus means a manual or operative procedure to repair an injury and restore the injury to a normal condition. Here, the veterinarian cleaned and debrided the cat's wounds. Debridement is the "usually surgical removal of lacerated, devitalized, or contaminated tissue." *Debridement*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/debridement (last visited Feb. 27, 2018). Another source defines debridement as the "removal of . . . dead or damaged tissue, esp. in a wound." *Debridement*, Taber's Cyclopedic Medical Dictionary (1997). The veterinary records show the providers used a Jackson-Pratt drain during the course of treatment. A Jackson-Pratt drain is "a special tube that prevents body fluid from collecting near the site of . . . surgery." National Institutes of Health, *How to Care for the Jackson-Pratt Drain*, 1,1 (2008), https://www.cc.nih.gov/ccc/patient_education/pepubs/jp.pdf. Images taken at the time of surgery show surgical staples that run the length of the animal's body. Finally, the veterinary records show billing for surgical services. On this record, Helmers did not establish the hearing officer acted illegally in concluding the cat underwent corrective surgery.

Helmers raises several spurious challenges to the hearing officer's decision. For example, Helmers contends there was insufficient evidence of

causation. She contends "another animal certainly could have bitten" the cat. She also contends the cat "could have injured himself running up the tree." She concludes it is unknown what caused the cat's injuries. In making this argument, Helmers misapprehends her burden in this case. "Our charge is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made." *Abbas v. Iowa Insurance Division*, 893 N.W.2d 879, 891 (Iowa 2017). "Evidence is substantial when a reasonable mind would accept it as adequate to reach the findings, even though the evidence would support contrary inferences." *City of Carroll v. Mun. Fire & Police Retirement Sys. of Iowa*, 554 N.W.2d 286, 288 (Iowa Ct. App. 1996). Here, the cat's owner observed the dog violently shaking the cat, observed the cat run up a tree, and shortly thereafter observed the cat with significant injuries requiring corrective surgery. The most reasonable finding drawn from the facts is the dog caused the injury. One can safely conclude the hearing officer did not act illegally in inferring the dog caused the cat's injuries rather than some other possible cause.

Helmers urges the city was required to show the dog was unprovoked as a prerequisite to establishing the dog was dangerous within the meaning of the municipal code. The argument is not supported by the text of the ordinance. Section 18-196 provides a dangerous animal is "any animal, including a dog . . . that has bitten or clawed a person while running at large and the attack was unprovoked, *or* any animal that has exhibited vicious propensities in present or past conduct." It is clear from the text of the ordinance the alternatives are in the disjunctive and provocation is material only to the first clause and not the second.

This court has previously reached the same conclusion. *See Hildreth v. City of Des Moines*, No. 15-0961, 2016 WL 7403705, at *3 (Iowa Ct. App. Dec. 21, 2016) ("The term "unprovoked" appears in a different clause of the ordinance, which is separated from the applicable clause by the word "or." As such, we think there is a clear intent for it to apply to only the first scenario."). There is no reason to deviate from our prior panel opinion.

Helmers contends the city cannot legally establish her dog "exhibited vicious propensities" by evidence of only a single attack. Again, the text of the ordinance is to the contrary. Several provisions of the municipal code require the city to prove multiple incidents to establish an animal has vicious propensities. Section 18-196(1) provides an animal can be declared dangerous upon a showing the animal "[h]as bitten or clawed a person on two separate occasions within a 12-month period." Similarly, section 18-196(5) provides an animal can be declared dangerous upon a showing the animal "[h]as attacked any domestic animal or fowl on three or more separate occasions within the lifetime of the attacking animal." The provision at issue here does not have a requirement of multiple incidents as a prerequisite to establishing dangerousness. The inclusion of language in some provisions requiring multiple incidents to establish dangerousness supports the inference the city intentionally did not require multiple incidents to establish dangerousness under the provision at issue. *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 194 (Iowa 2011) ("Where the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.").

Finally, Helmers contends the city's seizure and impoundment of her dog was illegal. Specifically, she contends the city failed to follow its ordinances in seizing the animal. She also contends the seizure of the animal violated her constitutional rights to be free from unreasonable search and seizure as protected by the Fourth Amendment. The arguments are immaterial. It is questionable whether Helmers has standing to assert an illegal seizure claim. At the time of seizure, Bickel owned the dog; Helmers' claim of ownership arose only after the city had already seized the dog. *See State v. Lowe*, 812 N.W.2d 554, 569 (Iowa 2010) (noting a person ordinarily "cannot challenge the seizure of another"). Regardless, the city's authority to seize and impound the animal is wholly independent of its authority to declare the dog dangerous. The municipal code provides the chief humane officer can issue an order of destruction even when the city has not seized and taken possession of the animal at issue. *See* Des Moines, Iowa, Code § 18-202 (providing the chief humane officer "shall declare such animal to be a dangerous animal and shall order the person owning, sheltering, harboring or keeping the animal to cause it to be destroyed in a humane manner within three days of service of the notice of the order"). There is no suggestion in this case that the dangerous dog declaration was in any way derivative of the allegedly unlawful seizure. Thus, the remedy, if any, for any unlawful seizure would be wholly independent of the dangerous dog determination and not a ground for relief in this proceeding. *See State v. King*, 867 N.W.2d 106, 111 n.1 (Iowa 2015) ("The assertion of and claims regarding the [fourth amendment] right primarily arise in the criminal context due to the sole means of remedy: the suppression of evidence in a prosecution against an accused that was obtained in or because of an

unconstitutional search or seizure of the accused, their home, or things."); *State v. Cline*, 617 N.W.2d 277, 291 (Iowa 2000) ("There is simply no meaningful remedy available to one who has suffered an illegal search other than prohibiting the State from benefiting from its constitutional violation.").

Helmers did not meet her burden of establishing the administrative hearing officer acted illegally in affirming the city's dangerous dog declaration. The hearing officer's findings are supported by substantial evidence. The hearing officer correctly determined and applied the law. The district court did not err in reaching the same conclusions.

II.

I next address the void-for-vagueness challenge to the city's animal ordinance. This court's review of a municipal ordinance is extremely deferential. "When an ordinance is challenged on constitutional grounds, a presumption of constitutionality exists that can only be overcome by negating every reasonable basis upon which the ordinance could otherwise be sustained." *N & N Sanitation, Inc. v. City of Coralville*, No. 01-1211, 2002 WL 31640695, at *6 (Iowa Ct. App. Nov. 25, 2002) (citing *Ackman v. Bd. of Adjustment*, 596 N.W.2d 96, 104–05 (Iowa 1999)). This is a heavy burden. To meet this burden, the challenger must prove beyond a reasonable doubt the ordinance "clearly, palpably, and without a doubt, infringes the constitution." *State v. White*, 545 N.W.2d 552, 557 (Iowa 1996); *Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416, 418 (Iowa 1991).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution prohibit the deprivation of a constitutionally protected interest pursuant to vague laws. As relevant here,

"[a] statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *State v. Showens*, 845 N.W.2d 436, 441 (Iowa 2014).

## A.

The majority first concludes the ordinance is unconstitutionally vague because the term "vicious propensities" is undefined and a reasonable person would not understand the scope of prohibited conduct. I disagree.

The term "vicious propensities" is not inherently ambiguous. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). An ordinance is not unconstitutionally vague for lack of notice merely because a key word is undefined. *See Lewis v. Jaeger*, 818 N.W.2d 165, 183 (Iowa 2012). Due process is satisfied so long as the ordinance's "meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law or previous judicial constructions." *Id.* Here, the majority actually provides a workable definition of an animal exhibiting "vicious propensities" as one exhibiting aggressive tendencies. The majority's definition is based on the common understanding of the words "vicious" and "propensities" as set forth in dictionaries.

The majority's own definition of the term "vicious propensities" is sufficiently clear to provide a workable standard. Indeed, as defined by the majority, the term seems more clear and less vague than other language passing constitutional

muster. *See, e.g., Grayned*, 408 U.S. at 108 (holding ordinance prohibiting "noise or diversion which disturbs or tends to disturb the peace or good order" to be constitutional); *Showens*, 845 N.W.2d at 449 (noting "reasonable person standards" in criminal law are not constitutionally infirm); *Lewis*, 818 N.W.2d at 184 ("In looking at the ordinance in question, there is good reason to use an elastic term such as 'emergency.' In order to protect public safety, the ordinance must necessarily use language that is sufficiently flexible to cover a wide variety of factual situations that may arise. We do not require a legislative body to define every term."); *Devault v. City of Council Bluffs*, 671 N.W.2d 448, 451 (Iowa 2003) (holding "nuisance" and "incomplete structure" were not unconstitutionally vague); *State v. Watkins*, 659 N.W.2d 526, 535 (Iowa 2003) (holding that child endangerment statute was not unconstitutional in criminalizing conduct that created "a substantial risk to a child or minor's physical, mental or emotional health or safety"); *State v. Reed*, 618 N.W.2d 327, 333–34 (Iowa 2000) (holding that term "continuing basis" relating to crime of ongoing criminal conduct was not vague); *Wettach v. Iowa Bd. of Dental Exam'rs*, 524 N.W.2d 168, 172 (Iowa 1994) (summarily rejecting challenge to disciplinary action for "dishonorable conduct"); *In re J.S.*, No. 16-0125, 2016 WL 1359122, at *6 (Iowa Ct. App. Apr. 6, 2016) (rejecting challenge to statute that allowed termination of parental rights where child suffered "mental injury" and stating a "certain amount of flexibility" was permissible).

To the extent the term "vicious propensities," standing alone, might be constitutionally ambiguous, the ordinance actually defines and limits the term. Section 18-196 provides a "dangerous animal" is "any animal that has exhibited

vicious propensities in present or past conduct." The ordinance then identifies seven instances in which an animal can be found to have exhibited vicious propensities. For example, at issue in this case is subparagraph (6), which allows the city to declare an animal dangerous where the animal "[h]as bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." The ordinance's identification of these seven instances removes any constitutional ambiguity regarding the scope of prohibited conduct.

Even though the majority defines the term "vicious propensities" using common reference materials and even though the ordinance actually defines and limits the regulated conduct, the majority concludes the ordinance is nonetheless unconstitutionally vague because it is unclear whether the seven subparagraphs in section 18-196 are illustrative or exclusive. In reaching this conclusion, the majority misapplies the void-for-vagueness doctrine. Under the controlling doctrine, this court is required to affirmatively interpret and construe the ordinance "in a fashion to avoid a constitutional infirmity where possible." *Showens*, 845 N.W.2d at 441. For example, the majority could hold the seven subparagraphs under section 18-196 are the exclusive means by which the city could prove an animal had vicious propensities. This construction would bring clarity to the ordinance and be consistent with our case law, which requires a clarifying construction to preserve the constitutionality of an ordinance. *See, e.g., State v. Coleman*, ___ N.W.2d ___, ___, 2018 WL 672132, at *14 (Iowa 2018) (stating ambiguous statute was not unconstitutional where the ambiguous provision was "understandable based on the greater context" of the remainder of the statute);

*Showens*, 845 N.W.2d at 445 ("In sum, to meet the constitutional concerns discussed in *Morales*, we interpret the phrase 'to enable a sex offender to become familiar with a location where a potential victim may be found' as requiring a determination that familiarity was tied to the potential presence of victims."); *Lewis*, 818 N.W.2d at 185 (holding ordinance that vested discretion in city manager to determine when an "emergency" required remedial action was not vague when the court added an implied term of "objective reasonableness"); *Formaro v. Polk Cty.*, 773 N.W.2d 834, 840 (Iowa 2009) ("In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute any reasonable construction to uphold it."); *State v. Nail*, 743 N.W.2d 535, 542 (Iowa 2007) ("On the other hand, if we fail to adopt *an in pari materia* analysis to impose a ceiling on civil penalties under section 907.14(1), we violate the rule of statutory construction that a statute must be interpreted in a fashion that avoids unreasonable or absurd results inconsistent with legislative intent."); *id.* at 543 ("With this interpretation, we give the statute a reasonable, contextual interpretation that is workable, promotes symmetry, and which therefore best manifests legislative intent. Further, our approach gives life to the notion that a declaration of unconstitutionality should be avoided where possible through any reasonable statutory interpretation."); *Wettach*, 524 N.W.2d at 171 ("If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints on judicial legislation, the statute must be interpreted in that way."); *State v. Bauer*, 337 N.W.2d 209, 210 (Iowa 1983) ("The challenger carries a weighty burden and must overcome a vigorous presumption of constitutionality. If we can make a statute constitutional by a reasonable

construction we do so."); *In re Hochmuth*, 251 N.W.2d 484, 488– 89 (Iowa 1977) ("[A] statute otherwise unconstitutional because of vagueness may be salvaged by a limiting interpretation which brings the application of the statute within constitutional bounds."). But the majority does the opposite. It applies the doctrine to create ambiguity instead of clarity and to find constitutional infirmity rather than preserve constitutional validity. This is error, and I dissent.

B.

The majority cites additional reasons for holding the statute unconstitutionally vague. A statute can be considered vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Showens*, 845 N.W.2d at 441–42. The majority concludes section 18-196(6) leaves too much discretion in the hands of city officials. Specifically, the ordinance does not exclude the possibility of enforcement against a person whose dog bites an "unlucky bird" with a broken wing or whose dog asserts a right to self-defense against an attack by an "aggressive opossum" lying in wait. The majority misapplies constitutional doctrine in reaching this conclusion.

Testing the sufficiency of an ordinance via the use of marginal hypotheticals is improper in void-for-vagueness-as-applied challenge. A statute or ordinance is not "vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Johnson v. United States*, 135 S.Ct. 2551, 2576 (2015). "It will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question." *Grayned*, 408 U.S. at 110 n.15. When addressing a vagueness-as-applied challenge, courts examine the facts of the case exclusively and not any

hypothetical set of facts under which the statute might be unconstitutional. *See United States v. Powell,* 423 U.S. 87, 92 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."); *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012); *State v. Dalton*, 674 N.W.2d 111, 121 (Iowa 2004) (stating in a "void-for-vagueness-as-applied claim" "we consider whether the defendant's conduct clearly falls within the proscription of the statute under any construction" and the "fact the statute may be vague as applied to other factual scenarios is irrelevant to this analysis"); *Devault*, 671 N.W.2d at 451 ("Persons who engage in some conduct that is clearly prescribed by an ordinance as interpreted in a judicial proceeding cannot complain of vagueness as applied to other conduct."); *Knepper v. Monticello State Bank*, 450 N.W.2d 833, 839 (Iowa 1990) ("A person who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to hypothetical conduct."); *Mallory v. State*, 563 N.E.2d 640, 644 (Ind. Ct. App. 1990) (stating the challenger "is not at liberty to devise a hypothetical situation which might demonstrate vagueness" and a "statute is void for vagueness only if it is vague as applied to the precise circumstances of this case"). Thus, the relevant question is not whether the constitution prohibits the enforcement of the dangerous dog ordinance against an owner whose dog bites an "aggressive opossum." The relevant question is whether enforcement of the ordinance creates constitutional concern when the owner's dog violently bit and shook a cat, caused the cat lacerations, tore the skin from the flesh of the cat, and the cat had to undergo surgical procedures at a

veterinary hospital.  I conclude the enforcement action in this case is at the core of the statute and not void-for-vagueness as applied.

If the majority's use of hypotheticals was simply meant to illustrate the larger point that the city's chief humane officer has unbridled discretion in enforcing the ordinance, the majority's conclusion still misses the mark.  The threshold inquiry in any void-for-vagueness challenge is whether the challenged ordinance is actually vague in the constitutional sense.  *See In re Welfare of B.A.H.*, 845 N.W.2d 158, 163 (Minn. 2014) ("Naturally, the essential question in a vagueness challenge is whether the statute is vague.  Vagueness, in the context of a claim like B.A.H.'s, means that a statute leaves its enforcers free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.").  The vagueness doctrine does not prohibit the exercise of discretion—even unbridled discretion—in the enforcement of the law.  Indeed, prosecutorial discretion is the rule and not the exception.  *See State v. Iowa Dist. Ct. for Johnson Cty.*, 568 N.W.2d 505, 508 (Iowa 1997) ("In our criminal justice system, the decision whether to prosecute, and if so on what charges, is a matter ordinarily within the discretion of the duly elected prosecutor.").  Instead, the vagueness doctrine prohibits the grant of discretion to law enforcement officials to enforce the laws where the grant of discretion is actually a delegation of policymaking authority *due to an ambiguity in the language*.  *See Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) ("[W]e have recognized recently that the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.  Where the legislature fails to provide such minimal guidelines, a criminal statute may

permit a standardless sweep."); *Grayned*, 408 U.S. 108–09 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis."); *Reed*, 618 N.W.2d at 332 (providing the void-for-vagueness doctrine requires that a statute be defined "in a manner that does not encourage arbitrary and discriminatory enforcement"); *see also Haggblom v. City of Dillingham*, 191 P.3d 991, 997 (Alaska 2008) (stating an ordinance is unconstitutionally vague when "its language is so imprecise as to encourage arbitrary enforcement"); *B.A.H.*, 845 N.W.2d at 163; *State v. Cowan*, 2003-Ohio-3547, 2003 WL 21517981, at *2 (Ohio Ct. App. July 3, 2003) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.").

Consider the following example to hone the distinction. Chapter 321 of the Iowa Code sets forth numerous traffic and vehicle equipment offenses with great specificity. Our courts have recognized "nearly all vehicles, if followed for any substantial amount of time, commit minor traffic offenses" for which the driver could be cited or punished. *See State v. Pals*, 805 N.W.2d 767, 776 (Iowa 2011). The enforcement of the traffic laws, however, is left wholly in the discretion of law enforcement officials. *See State v. Iowa Dist. Ct. for Johnson Cty.*, 568 N.W.2d at 508. We would not conclude chapter 321, or any particular offense set forth therein, is unconstitutionally vague simply because law enforcement officials have complete discretion in enforcing the law.

The recent case of *In re C.B.*, No. 16-2117, 2018 WL 347539, at *1 (Iowa Ct. App. Jan. 10, 2018), is also illustrative. In that case, a child was adjudicated

delinquent for committing sex acts against underage children. The child contended the law was vague as applied to him because he was also an underage child. He was thus a perpetrator and a victim, and the prosecutor had complete discretion to choose whom to prosecute, if anyone. This court rejected the constitutional challenge, concluding the "prohibited conduct is well defined" and the prosecutor's "exercise of discretion . . . does not create a constitutional problem." *Id.* at *6.

These examples demonstrate there is a constitutional distinction between the case in which law enforcement officials have discretion in the enforcement of the law and the case in which law enforcement officials have discretion in both defining the law and enforcing the law. The former case does not present a vagueness concern while the latter case does. *See Haggblom*, 191 P.3d at 998 (stating a law is unconstitutionally vague when the language "is so imprecise that is confers upon law enforcement personnel undue discretion in determining what constitutes the crime"); *B.A.H.*, 845 N.W.2d at 164 ("The essential constitutional problem with such statutes is not that they fail to identify whom to prosecute or allow for enforcement against some violators and not others, but, rather, that their statutory vagueness lets enforcers define who is a violator in the first place.").

When understood in this light, the majority's conclusion the ordinance vests the chief humane officer with unlawful discretion fails. The challenged ordinance provides a dangerous animal is an animal that "[h]as bitten another animal or human that causes a fracture, muscle tear, disfiguring lacerations or injury requiring corrective or cosmetic surgery." The operative terms—animal, human, fracture, muscle tear, disfiguring lacerations, injury, and corrective or cosmetic surgery—seem clear enough, readily capable of interpretation and construction,

and sufficient to provide guidance in the enforcement of the law. The majority has thus not established, as a threshold matter, that the challenged language is vague within the meaning of doctrine. This is simply a case in which a law enforcement officer has discretion to enforce or not enforce a relatively clear law. This does not rise to the level of a constitutional violation. *See, e.g., United States v. Foster*, 754 F.3d 1186, 1193 (10th Cir. 2014) (rejecting argument that existence of discretion to charge multiple offenses for the same conduct rendered statute vague and stating "the standard is not whether the prosecutor has discretion but whether the law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis"); *Daniel v. City of Tampa, Fla.*, 843 F. Supp. 1445, 1448 (M.D. Fla. 1993) ("The void-for-vagueness challenge is misdirected at the enforcement scheme. This court understands *Kolender v. Lawson*, 461 U.S. 352 (1983), and the rest of void-for-vagueness doctrine as requiring the statute itself to be unconstitutionally vague before it can fall. The enforcement scheme is to some extent subject to prosecutorial discretion, so common sense dictates that only the statute itself need convey to the public a sufficiently definite warning as to the proscribed conduct."); *State v. Altgilbers*, 786 P.2d 680, 694 (N.M. Ct. App. 1990) ("In contrast, defendant has no claim that the CSP and CSC statutes are too vague to inform defendant or others what conduct is criminal. What is involved in the present case is not discretion to decide what acts are criminal but discretion to decide how to prosecute criminal acts. Such prosecutorial discretion is well-recognized in the law. Due process does not impose strict limits on that discretion. No void-for-vagueness problem is presented in this case.").

One final point. It is constitutionally immaterial the word "animal" includes birds, opossums, or any other animal. As noted above, the use of marginal hypotheticals is disallowed in as-applied challenges. Independently, the word "animal" is clear enough to provide constitutionally sufficient guidance to law enforcement officials. Whether the city would choose to enforce the ordinance following a dog bite of a bird or opossum is left to the discretion of city officials. "To avoid a rule from unduly restricting the regulation of certain matters, a certain degree of indefiniteness is necessary." *Fisher v. Iowa Bd. of Optometry Exam'rs*, 510 N.W.2d 873, 876 (Iowa 1994). It seems the majority's constitutional concern is simply a policy disagreement with the city's decision to permit enforcement where a dog bites an "animal" resulting in a specified injury where the word "animal" is not delimited to include only certain animals and exclude other animals. Mere policy disagreement with the City of Des Moines is not a constitutional concern. *See, e.g., Haggblom*, 191 P.3d at 998 (rejecting vagueness challenge, stating "[i]t is hardly surprising that a law enforcement officer uses his judgment in applying the law," and stating the use of "one's own judgment is hardly a concession of arbitrary action"); *Zollar v. City of Chicago Dept. of Admin. Hearings*, 44 N.E.3d 419, 422 (Ill. Ct. App. 2015) ("Zollar's real complaint is that the Chicago city council did not elect to include provocation by other animals within the definition of 'provocation' in the ordinance. But this does not make the ordinance vague as applied here. We will not second-guess the city council's decision."); *Lucas Cty. Pit Crew v. Fulton Cty. Dog Warden*, 79 N.E.3d 1244, 1247 (Ohio Ct. App. 2016) (rejecting vagueness challenge to dangerous dog ordinance); *Cowan*, 2003 WL 21517981, at *3 (rejecting vagueness challenge that definition of "vicious

dog" was subjective); *Garza v. State*, No. 05-07-00176-CB, 2007 WL 3348419, at *3 (Tex. C.t App. Nov. 13, 2007) ("Although the animal control officer appeared to be confused about the common sense application of the term 'keep,' we cannot conclude the ordinance itself is so inherently confusing as to permit selective enforcement.").

## III.

Helmers did not meet her burden of establishing the administrative hearing officer acted illegally.  Nor did she meet her significant burden in establishing the city's ordinance is unconstitutionally vague.  For these reasons, I respectfully dissent.