# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-1249

State of Minnesota,
Respondent,

vs.

Jayshawn Jarmell Jones,
Appellant.

**Filed August 4, 2025**
**Affirmed**
**Wheelock, Judge**

Ramsey County District Court
File No. 62-CR-23-1458

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Anna R. Light, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Wheelock, Judge; and Jesson, Judge.[*]

## SYLLABUS

Minnesota Statutes section 609.667(3) (2022), which prohibits the possession of a firearm without a serial number, does not violate the Second Amendment to the United

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

States Constitution as applied to appellant's possession of a privately made firearm without a serial number.

**OPINION**

**WHEELOCK**, Judge

In this direct appeal from the judgment of conviction, appellant argues that Minnesota Statutes section 609.667(3), as applied to his possession of a firearm without a serial number, violates the Second Amendment to the United States Constitution because appellant's firearm never had a serial number.[1] We affirm.

**FACTS**

Respondent State of Minnesota charged Jones with possessing a firearm without a serial number in violation of Minnesota Statutes section 609.667(3). Jones waived his right to a jury trial and submitted his case to the district court on stipulated evidence pursuant to Minnesota Rule of Criminal Procedure 26.01, subdivision 4, so that he could obtain appellate review of the pretrial ruling on his motion to dismiss the charge as unconstitutional. We derive the facts from Jones's stipulated-evidence trial.

On a chilly day in March 2023, St. Paul police officers responded to a call from Regions Hospital reporting that a person was carrying a firearm inside the hospital. When the officers arrived at the hospital, they encountered appellant Jayshawn Jarmell Jones standing in the vestibule with a hospital security staff person.

---

[1] This type of firearm is sometimes referred to as a "ghost gun," which "is a common term for a privately made firearm that is not identified by a serial number." *State v. Vagle*, 999 N.W.2d 909, 911 n.2 (Minn. App. 2023), *rev. granted* (Minn. Mar. 19, 2024).

2

Although Jones denied having any weapons during his conversation with the officers, one of the officers patted Jones down and identified and removed a firearm from the front pocket of Jones's hooded sweatshirt. The officers then placed Jones under arrest.

The firearm was not loaded. It had a dark green slide marked with "Combat 19" and a black frame marked with "Polymer80." The firearm did not have a serial number and appeared to be assembled privately from parts of other firearms or weapons-parts kits. Later, an officer examined the firearm and concluded that it was safe to test-fire. The officer discharged the firearm twice and determined that it was functional.

After being charged with possessing a firearm without a serial number, Jones moved to dismiss the charge, arguing that the statute was unconstitutional on its face and as applied. The district court denied Jones's motion, concluding that a firearm without a serial number is not within the normal and ordinary use permitted by the Second Amendment and that, if it were, regulating firearms and requiring them to have serial numbers or other identification is consistent with historical tradition. The district court next determined that the firearm found on Jones did not have a serial number and that all reasonable inferences drawn from the circumstances proved by the evidence were consistent with Jones knowingly possessing the firearm, and it found Jones guilty of the offense. The district court stayed the imposition of Jones's sentence and placed him on supervised probation for two years.

Jones appeals.

**ISSUE**

Does Minnesota Statutes section 609.667(3), as applied to appellant's possession of a privately made firearm without a serial number, violate the Second Amendment to the United States Constitution?

**ANALYSIS**

Minnesota Statutes section 609.667 (2022) includes three clauses. The first clause prohibits a person from obliterating, removing, changing, or altering the serial number on a firearm; the second clause prohibits a person from possessing such a firearm; and the third prohibits a person from possessing "a firearm that is not identified by a serial number." Minn. Stat. § 609.667. Jones argues that the third clause violated the Second Amendment because the statute criminalizes the possession of a privately made firearm and there is no historical analogue for requiring serial numbers on privately made firearms.[2]

Appellate courts review the constitutionality of a statute de novo. *State v. Fitch*, 884 N.W.2d 367, 373 (Minn. 2016). The task of courts when interpreting a statute and the United States Constitution "is to seek harmony." *United States v. Rahimi*, 602 U.S. 680, 701 (2024) (quotation omitted). An appellate court's ability "to declare a statute

---

[2] Jones raises two additional arguments: first, that the effect of the statute is to require that all firearms have serial numbers and, second, that the burden of losing a firearm as a penalty was not contemplated in history. Although the state responds to these arguments, they are collateral to the issue presented and we need not reach them to decide this appeal. *See Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 837 (Minn. 1991) ("We have been required to decide a difficult question in a specific situation and have done so. . . . It is unnecessary to speculate or decide issues not before us."); *see also Bondi v. VanDerStok*, 145 S. Ct. 857, 869 (2025) (declining to address every foreseeable consequence of a decision related to weapons-parts kits because "this case does not require [the Court] to untangle exactly how far [the regulation] reaches").

unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Welfare of B.A.H.*, 845 N.W.2d 158, 162 (Minn. 2014). When an appellant brings an as-applied challenge, review of the statute is limited to whether the statute impermissibly burdens the appellant's right based on the facts presented by the case at hand. *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004).

The Second Amendment protects "the right of the people to keep and bear arms." U.S. Const. amend. II; *see District of Columbia v. Heller*, 554 U.S. 570, 599 (2008) ("[T]he Second Amendment was not intended to lay down a novel principle but rather codified a right inherited from our English ancestors . . . ." (quotations omitted)). This right "is among the fundamental rights necessary to our system of ordered liberty." *Rahimi*, 602 U.S. at 690 (quotation omitted). And the right enshrined in the Second Amendment applies to the states through the Fourteenth Amendment. U.S. Const. amend. XIV, § 1; *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 37 (2022).

"Like most rights, though, the right secured by the Second Amendment is not unlimited." *Rahimi*, 602 U.S. at 690 (quotations omitted). "At the founding, the bearing of arms was subject to regulations." *Id.* at 691. To determine whether a challenged law infringes on a person's Second Amendment right, the United States Supreme Court has declared that the inquiry must be "rooted in the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19. The government bears the burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds

of the right to keep and bear arms." *Id.* The Supreme Court has explained the applicable test as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id.* at 24 (quotation omitted). The Supreme Court explained this test further, saying that the challenged law "may not be compatible" with the Second Amendment if the law regulates the right "to an extent beyond what was done at the founding." *Rahimi*, 602 U.S. at 692. However, while the law "must comport with the principles underlying the Second Amendment, . . . it need not be a dead ringer or a historical twin." *Id.* (quotations omitted). Synthesizing the test, courts typically consider whether the conduct at issue is covered by the plain text of the Second Amendment and then whether the challenged law is consistent with the principles of the Second Amendment as identified by reviewing historical tradition. *Id.* at 691. Therefore, to conclude that the statute criminalizing the possession of a firearm that never had a serial number is constitutional as applied, we must be persuaded that the statute is consistent with the historical tradition of firearm regulation as it was understood at the time of the nation's founding.

We begin by observing that, as to whether the Second Amendment's plain text "presumptively protects" a person's conduct, *Bruen*, 597 U.S. at 24, our court recently held that the Second Amendment does not protect possession of firearms that have had their serial numbers removed, *State v. Gaal*, 21 N.W.3d 256, 270 (Minn. App. 2025). Our

opinion reached that conclusion by reasoning that firearms that have had their serial numbers removed "are not typically possessed or commonly used by law-abiding citizens for lawful purposes" and that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 269-70 (quotation omitted). We are not aware of any caselaw from Minnesota or the United States Supreme Court that applies similar reasoning to firearms that never had a serial number. Regardless, we need not decide whether firearms that never had a serial number are categorically covered by the Second Amendment because we conclude that the statute criminalizing the possession of a firearm that never had a serial number does not infringe upon the principles underlying the Second Amendment and, thus, that it is consistent with the original understanding of the right to bear arms as covered in the Second Amendment. We therefore affirm the district court's denial of Jones's motion to dismiss his charge.

To reach that conclusion, we begin by identifying the scope of the Second Amendment right at issue, which is understood by looking at the text and history of the United States Constitution "to help delineate the contours of the right." *Rahimi*, 602 U.S. at 691. The challenged statute cannot burden the Second Amendment right beyond what was understood by the people at the time of the nation's founding, requiring courts to apply "faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 692 (quotation omitted). However, the test is "not meant to suggest a law trapped in amber." *Id.* at 691. Rather, a court must ascertain whether the challenged statute is "relevantly similar" to those contemporaneous sources. *Id.* at 692 (quotation omitted). The challenged statute need not be a precise match for the contemporaneous law but must be

7

"analogous enough to pass constitutional muster." *Id.* (quotation omitted). This is referred to as a "historical analogue." *Bruen*, 597 U.S. at 30 (quotation omitted). If there is a law from the time of founding that imposed "similar restrictions," then that law is "a strong indicator" that the challenged law or regulation is "within a permissible category of regulations." *Rahimi*, 602 U.S. at 692.

The state identified historical analogues in its brief, and we are persuaded by those in addition to the historical analogues discussed in *Gaal*, each of which is relevant to this inquiry: (1) an 1805 law that "required newly manufactured firearm barrels to be inspected and permanently marked by an inspector" and (2) an 1830 law that required "newly manufactured firearm barrels be tested, marked, numbered, and certified." 21 N.W.3d at 270-71. The state also identifies George Washington's requirement that his army's firearms be marked and laws from the British colonies in America and the first states in the nascent United States that required a recording or census of all firearms in the area to easily identify who owned firearms. *United States v. Bradley*, No. 2:22-CR-00098, 2023 WL 2621352, at *4 n.4, *5 (S.D. W. Va. Mar. 23, 2023).[3]

Jones responds by arguing that these practices were intended to address theft, but we are not persuaded that deterring theft was their only purpose or that this purpose somehow negates that these practices are otherwise analogous. In *Gaal*, we considered that, around the time of the nation's founding, "states used markings to identify firearms

---

[3] We are not bound by opinions of federal courts, but we may follow them to the extent that they are persuasive. *Citizens for Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003) ("Although not binding, these other federal court opinions are persuasive . . . .").

and prohibited the erasure or obscuring of such markings" and concluded that this was a historical analogue for laws prohibiting the obliteration of serial numbers. 21 N.W.3d at 271. These laws and practices demonstrate that the process of marking or otherwise recording ownership of a firearm was a practice used by and known to people contemporaneous with the nation's founding, and therefore, the criminal statute under which Jones was charged "is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692.

While the markings on firearms around the time of the nation's founding may not have been in the form of serial numbers, the markings identified firearms in a manner that conveyed who possessed them, produced them, or inspected their parts. Additionally, these analogues indicate that people reported their firearms to the local government. Therefore, historical analogues exist that are "relevantly similar" to Minnesota's prohibition of possessing a firearm without a serial number, and they serve as a "strong indicator" that Minnesota Statutes section 609.667(3) fits "within a permissible category of regulations" for firearms consistent "with the principles underlying the Second Amendment." *Id.* (quotation omitted).[4]

---

[4] Our conclusion here is consistent with *VanDerStok*, a recent opinion from the United States Supreme Court in which it considered whether the Gun Control Act of 1968 allowed the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) "to regulate *any* weapon parts kits or unfinished frames or receivers" such that a firearm assembled from a firearm kit was required to have a serial number. 145 S. Ct. at 862-66. Although the opinion did not consider the Second Amendment, the Supreme Court ultimately upheld the regulation, concluding that the Gun Control Act authorized the ATF to require unfinished frames or receivers that are part of some weapons-parts kits to have serial numbers. *Id.* at 876.

9

Based on our inquiry into the historical tradition of the boundaries of the right to keep and bear arms, we hold that Minnesota Statutes section 609.667(3), which prohibits the possession of a firearm without a serial number, does not violate the Second Amendment to the United States Constitution as applied to Jones's possession of a privately made firearm without a serial number.

## DECISION

Jones was convicted of possessing a firearm without a serial number in violation of Minn. Stat. § 609.667(3). We conclude that laws and practices that existed contemporaneous with the nation's founding are analogous to section 609.667(3). Because it is "relevantly similar" to those laws and practices, section 609.667(3) is consistent with the principles underlying the Second Amendment and does not infringe upon Jones's Second Amendment right as applied to his possession of a privately made firearm without a serial number. Therefore, the district court did not err by denying Jones's motion to dismiss the charge of possessing a firearm without a serial number.

**Affirmed.**